1
Collette Stark
2175 Cowley Way
San Diego, CA 92110
2
619-347-0726
videosolutions@me.com
3

Anton Ewing
4
3077 B Clairemont Drive #372
San Diego, CA 92117
5
(619) 719-9640
anton@antonewing.com
6

7
Plaintiffs In Pro Per

8

9

10
**THE UNITED STATES FEDERAL DISTRICT COURT**

11
**SOUTHERN DISTRICT OF CALIFORNIA**

12

13
Collette Stark, an individual;

14
Anton Ewing, an individual,

15

16
        Plaintiffs,

17
    vs.

18

19
Shorepointe Partners, LLC, a California
limited liability company;
20
Frederick Clairmont, Jr., as an
individual and officer of Shorepointe
21
Partners, LLC,

22
        Defendants.

23

Civil Case No.  **'18CV1828 JAH NLS**

**COMPLAINT**

> **1. TCPA - 47 U.S.C. §227(b)**
> **2. CIPA - PC §§637.2 & 632.7**

**JURY TRIAL REQUESTED**

**BACKGROUND**

24

25
        Plaintiff Collette Stark and Plaintiff Anton Ewing, each proceeding pro se,

hereby complain and allege against Defendant Shorepointe Partners, LLC, a

California limited liability company (herein "SHOREPOINTE"), Defendant Frederick Clairmont, Jr., as an individual and as an officer, manager and member of Shorepoint Partners, LLC (herein "Clairmont") and owner of Shorepoint Partners, LLC.

The TCPA causes of action (47 USC §227(b)) filed herein for, *inter alia*, illegal telemarketing to each Plaintiff's DNC[1] registered cellular phone through the use of an ATDS is expressly alleged against Defendants Shorepointe Partners, LLC, a California limited liability company and Defendant Clairmont,

The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal recording of the telemarketing call to each Plaintiff's phone without disclosure of the recording is alleged against Defendants Shorepoint Partners, LLC, a California limited liability company and Defendant Clairmont.

## COMPLAINT

1.    Beginning on July 19, 2018, Plaintiff Ewing and Plaintiff Stark began to get inundated with telemarketing calls from Shorepointe Partners, LLC.  The telemarketers on solicitation calls refused to give out their personal address, location, phone number or email.  Plaintiffs had to play along with the telemarketing script that was being read to them.  Eventually, like all telemarketers, they had to disclose information enough for an appointment. Plaintiffs set an appointment and showed up at 10650 Scripps Ranch # 212 San

---

[1] See do not call registry at www.donotcall.gov administered by the Federal Trade Commission.

18cv

Diego Ca 92131 on August 4, 2018 at 11: 58 AM.  Plaintiffs met with Frederick Clairmont Jr. and his wife.  They were selling timeshare and resort club memberships.  Clairmont said that he would provide the contact information of the lead source, but it turned out, the lead source is and was a boiler-room in the Philippines that Clairmont set up to evade American privacy and telemarketing laws.

2.     On the below listed dates and times, Defendant Shorepoint Partners, LLC auto-dialed, using an ATDS with a prerecorded message, telemarketing calls to 619-347-0726 to Plaintiff Collette Stark's personal cell phone that she regularly and normally uses, which is registered on the national do not call registry at www.donotcall.gov, as follows:

      a.  July 19, 2018 at 3:41 PM from 702-536-9851

      b.  July 24, 2018 at 8:02 PM from 702-536-9851

      c.  July 30, 2019 at 4:41 PM from 702-536-9851

      d.  July 31, 2018 at 7:16 PM from 702-536-9851

      e.  July 31, 2018 at 7:26 PM from 702-536-9851

      f.  Text message on July 31, 2018, at 8:14 PM

      g.  Text message on July 31, 2018 at 9:07 PM

3.     Plaintiff Stark's phone number was registered by Stark on www.donotcall.gov on 2/13/2007, which is more than 31 days prior to any and all

illegal calls mentioned herein.  All telemarketers are required to scrub their lead lists every 30 days.

4.      Phone numbers 530-744-2180 and 702-536-9851 belong to Defendant Shorepoint Partners, LLC.

5.      Shorepointe Partners, LLC is located at 5055 Avenida Encinas, Suite 100, Carlsbad, CA 92009 and is a "person" for TCPA purposes.

6.      Phone number 530-744-2180 and 702-536-9851 were used by Defendant Shorepoint Partners, LLC.

7.      Shorepointe also uses 760-230-8077 to run its business.

8.      George Schoell, at  runs Shorepointe Resort, LLC, an Idaho limited liability company.  Schoell claims he has nothing to do with Clairmont and his telemarketing operations.  Plaintiffs will take Schoell at his word for now but it truly seems like Schoell might be heavily involved with the telemarketing operations.  Plaintiffs reserve the right to name Schoell once discovery yields facts that pass muster under Rule 11.

9.      Plaintiff Stark requested that Defendant Shorepointe Partners, LLC stop calling her and send a copy of their Do Not Call policy to her on each and every call.

10.     Plaintiff Ewing was called by Shorepointe from 866-550-5058 on July 26, 2018 to solicit Ewing for a timeshare purchase.  The address given by the caller

18cv

1   was 10650 Scripps Ranch #121, San Diego, CA 92131.  Ewing expressly told the

2   agent on the phone to not text him.  Then, Shorepointe texted Ewing.  The text

3   message from 323-989-3378 stated:

     a.   Hello! This is Laverne, Confirmation's Manager from SHOREPOINTE
       PARTNERS SAN DIEGO CA!  We would like to remind you with your
       scheduled appointment to attend out 90 minute presentation Tomorrow
       Saturday Aug. 04, 2018 at 11:45 AM.  Gifts: 3D/2N Accommodations plus
       roundtrip airfare tickets Anywhere in Continental of US + $100 Dining
       Discount Card.  Address: 10650 Scripps Ranch Blvd #212 San Diego Ca
       92131. Claiming Code: LAN1001.  Toll Free #: 1-323-989-3378.  Please call
       to confirm you attendance. Thank You!

11.   Defendant Clairmont has unlawfully controlled, managed and directed the

criminal operations of Shorepointe and is therefore vicariously liable and liable

under alter ego theories of liability.  Clairmont cannot evade or avoid liability for

ordering, directing and instructing employees of Shorepointe to violate 47 USC

section 501 (a crime) to violating 47 USC §227(b)(1)(A).

12.   Shorepointe called Ewing on 619-719-9640.

13.   The Defendants, including Shorepointe and Clairmont, used a robo-dialing

telemarketing device known as an Automatic Telephone Dialing System to call

Plaintiffs.  The telephone device used by Defendants has the capacity of store

COMPLAINT- 5

18cv

numbers and has the capacity to dial numbers automatically without human intervention[2].

14.     Plaintiff Ewing requested that Defendant Shorepointe stop calling her and send a copy of their Do Not Call policy to her on each and every call.

15.     Additionally, Defendants left multiple pre-recorded messages on each of both Plaintiff's cell phones.  Plaintiffs have a full and complete recording of many of the harassing and annoying calls that violated California Penal Code §653m and will provide a true and accurate copy of the same to the Court.

16.     "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).  The Federal Communications Commission ("FCC")— which has authority to implement the TCPA's provisions, *see* 47 U.S.C. § 227(b)(2)— has stated that a plaintiff, to establish a TCPA violation, "need only show that [the Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo*

---

[2] Much like a machine gun has the capacity of shoot bullets in full auto mode or in semi auto mode.  Just because Defendants claim they used their ATDS machine gun in semi auto mode, it is still an ATDS with capacity for full auto, and therefore using said device is a violation of 47 USC §227(b)(1) at $1,500 per call.  This is in addition to the 47 USC §227(c) violations at $1,500 per call.

*Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).  Because the Defendants have violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendants, and each of them, have committed the criminal violation of 47 U.S.C. §501.  Shorepointe's entire business model and business operation is a scam and fraud.  The multiple acts of wire fraud, in violation of 18 USC §1343, provide the basis and foundation of predicate acts that make Defendants, and each of them liable for conspiracy to violate the TCPA.

17.    Shorepointe and Clairmont have knowingly and intentionally failed to register as telemarketers in direct violation of California Business & Professions Code sections 17511.1 and 17511.9 (a felony).  Shorepointe and Defendant Clairmont have also failed to post the required $100,000 bond with the California Department of Justice which is required for all telemarketers doing business in California.

18.    "[P]rior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012).  Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail messages at a number assigned to a cellular telephone service using an automatic dialing system or an artificial or pre-recorded voice." *Id.* (denying motion to

18cv

dismiss for failure to state a claim where the plaintiff alleged "that [the] [d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

19.    Plaintiff Ewing alleges that Defendants placed repeated automated telephone collection calls to Plaintiff Ewing's cell phone (619-719-9640) from Defendant's phone and that the calls exhibited signs of being made with an Automated Telephone Dialing System, including repeated telemarketing calls to Plaintiff Ewing within a period of time and the presence of a pause or click (which is proven by the recording), which is commonly associated with an Automated Telephone Dialing System (ATDS). Those allegations are true and are sufficient to establish the elements of a TCPA claim.  Defendant Shorepointe' telemarketing agent also admitted on the call that they used an ATDS to initiate the dialing of the call to Plaintiff Ewing.

20.    ABC, Inc (a Doe Defendant to be named after discovery reveals the same) that was hired by Shorepointe to knowingly and intentionally make robo-dialed calls to Plaintiff Ewing and Plaintiff Stark with a pre-recorded voice message that was used for telemarketing purposes between June 1, 2017 and August 4, 2018. ABC, Inc has subsequently made illegal telemarketing calls to Ewing and discovery may very well lead to adding ABC, Inc as a defendant herein.

18cv

21.    Plaintiffs each requested a copy of Clairmont's and Shorepointe's Do-Not-Call policy and both Shorepointe and Defendant Clairmont failed to provide a copy.  This is a violation of 47 USC §227(c).  To this day, Defendants have still not provided a copy of their required written do not call policy.

22.    Carmela Reyes, an agent of Shorepointe, committed the crime of extortion by threatening Plaintiff Ewing with criminal action by threatening to contact the San Diego Police Department if Plaintiff did not give up his rights, money and property, all in violation of California Penal Code sections §519 and 523.  Carmela Reyes acted at and with express direction and control by Shorepointe.

23.    Plaintiff Ewing also spoke with "Jackie" in the Philippines and she admitted that they called Ewing's cell phone without scrubbing their list and that they do not have a Do Not Call policy.   Jackie can be reached at 323-989-3378.  This is a Google voice phone number.

24.    California Civil Code section 1770(a)(22)(A) prohibits prerecorded telemarketing messages.  Shorepointe called with an initial prerecorded message.

25.    Plaintiffs hereby expressly plead, *in the alternative*, that Defendant Clairmont, is the alter ego of Defendant Shorepoint Partners, LLC.  Defendant Clairmont is, *in the alternative*, the alter ego of Shorepointe for purposes of piercing the corporate veil of liability protection.  Specifically, Clairmont cannot hide behind the corporate veil to avoid and evade liability because the underlying

conduct alleged herein is criminal.  That is, Clairmont cannot use Shorepointe to commit their criminal activity of wire fraud, criminal ATDS telemarketing, extortion, and criminal fraud.   The corporation does not insulate Clairmont from personal liability for his criminal activities. Plaintiffs allege that the corporation's veil should be set aside for purposes of this lawsuit to personally attack and reach assets of Clairmont directly or to indemnify Shorepointe and Defendant Clairmont for the criminal acts engaged in by and through Shorepointe and Defendant Clairmont at the direction and control of Clairmont.

26.     Plaintiffs hereby expressly plead, allege, complain and accuse that Defendant Clairmont is and was knowingly and intentionally engaged in a conspiracy to commit telemarketing and TPCA violations through the conduct of an enterprise, that is the Shorepointe enterprise.  Defendants have and are running a boiler-room operation with over one hundred telemarketers that they have trained and conspired with to make illegal telemarketing calls to Americans whose cellular and home phones are registered on the FTC's national Do-Not-Call registry.  The running and operating of the telemarketing boiler-room to harm, injure, scam and hurt Americans, including these Plaintiffs, is a criminal act in violation of the TCPA.

18cv

27.    Defendant Clairmont gave orders, directions, advice, counsel and information to Shorepointe on exactly how, when and where to conduct illegal telemarketing calls to California citizens, including Plaintiffs specifically.

28.    Defendants actually have several boiler-room operations, including one in the State of California at the Shorepointe headquarters and another in the Philippines.  Defendants believe that running their wire fraud operation using the wires or telephone systems of the United States by originating their scam telemarketing calls from outside the USA will allow them to evade America's telemarketing and recording laws.  This they cannot do.  This Court is requested and moved to make America great again and bring home jobs to America and not allow Defendants to export American dollars and American jobs overseas like these Defendants have done.  Defendants, and each of them, have directly and through each other, violated 18 USC section 1343 (wire fraud) by calling Plaintiff and other California residents from the Philippines and California to illegally sell their timeshares into California without a California telemarketer license from the CA Department of Justice.

29.    Defendant Clairmont harmed, injured and caused tortious interference with each Plaintiff's business by repeatedly calling or causing others hired by him to call Plaintiffs over and over again to telemarket their scam.  Each Plaintiff's business was seriously interrupted by the plethora of calls instituted and made by

18cv

Clairmont and Shorepointe. Plaintiffs could not meet with their own separate clients during the times the Defendants called each Plaintiff's phone. Further, each Plaintiff could not engage in gainful business activity while Plaintiffs had to wait for their cell phones to recharge as a result of the battery depletion cause by Defendants. Moreover, Plaintiffs suffered and incurred the loss of the use of the phone during each call and during the recharging thereof. In addition, Plaintiffs were harmed and injured by the fact that Defendants, and each of them, directly and proximately caused Plaintiffs to have to pay for the electric utilities to recharge each phone and to have to pay AT&T cellular phone company for the additional minutes used up by Defendant's illegal scam telemarketing calls made to sell into California without any license whatsoever. Defendant's conduct as described herein above actually caused Plaintiffs to sustain and suffer actual harm and loss of business and property. The US Supreme Court has ruled that defendants are vicariously liable under the TCPA for the acts of their agents. But for each Defendant's conduct, Plaintiffs would have been able to earn the income, revenue and gains that were denied to Plaintiffs as a direct, legal and proximate cause of each Defendants illegal, criminal and conspiring conduct. Plaintiffs additionally allege that the significant time and effort spent to bring these Defendants to justice before this Court through research and investigation is also an injury caused by Defendants and each of them. Defendants are required to obey the law and when

18cv

Plaintiffs have to expend time, money, effort and energy to bring these law-breakers to justice, it is a substantial injury to Plaintiffs.

30.     Plaintiffs were forced to pay San Diego Gas & Electric Company more money for Plaintiff's electric utility bill than they would have had to pay but for Defendants, and each of them, violating Plaintiff's privacy and other rights from the illegal calls made by Defendants and their employees and agents, to Plaintiffs.

31.     Defendants actually sat down on July 3, 2017 and knowingly and intentionally met, convened, gathered and conspired to employ a telemarketing company located in the Philippines, to make ATDS-dialed prerecorded message calls to Plaintiffs and thousands of other California citizens and residents. Defendants, and each of them, conspired to employ this Philippine telemarketing boiler-room of criminals to use advanced technology to randomly and sequentially dial every combination of telephone number in all of California's area codes, including Plaintiff's home and cellular phones within area code 619.  The persons, the Defendants, and each of them, employed, trained and conspired within the Indian operation to make and in fact did make live transfers of the illegal calls to the boiler-room operation at their corporate headquarters using the telephone system, whether direct dial or through Skype or Google Voice, to violate the DNC registry to telemarket is wire fraud.  Defendants knowingly and intentionally, with

18cv

an evil hand guided by an evil mind, exactly and expressly did this every day from July 3, 2017 to August 4, 2018.

32.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for its provisions limiting junk-fax transmissions.  A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered--and routing a call to voicemail counts as answering the call.  An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7th Cir. 2012).*

33.     As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v. Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

34.     The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However, because Plaintiffs are proceeding pro se, their complaint "must be held to less

COMPLAINT- 14

stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard reviewing pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

## STANDING

31.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    i.   A valid injury in fact;

    ii.  which is traceable to the conduct of Defendants;

and is likely to be redressed by a favorable judicial decision. See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560. In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

A. The "Injury in Fact" Prong.

Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo* (Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiffs were called on their cellular phones at least twenty-five (25) times by Defendants.  In fact, Plaintiffs expressly informed Defendants to cease and desist from all future telemarketing on the very first call.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiffs in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry"). As well, Plaintiffs had no prior business relationship with Defendants prior to receiving the seriously harassing and annoying calls as well as the extortionate threats by Clairmont.   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.      In the instant case, it was each Plaintiff's phone that was called and it was Plaintiffs who answered the calls. It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiffs having no prior

18cv

business relationship with Defendants and Plaintiff's attempt to avoid the damage by registering their number on the DNC Registry.  Additionally, Plaintiff Ewing has a clear warning on each and every page of his web domain that warns offenders that if you call, you will be sued.  In fact, Ewing had to remove his own phone number from his web page several years ago (please go ahead and verify this on the waybackmachine[3]) due the incessant, annoying and harassing calls by scam telemarketer like these defendants.  Moreover, a simple Google search of Ewing's phone number will yield page after page of warnings that threaten a civil suit if you call.  And, Ewing has sent out hundreds of emails to TCPA defense attorneys nationwide warning them that if their clients call Ewing's phone, they will be sued.  Finally, Plaintiffs are responsible to pay the bill on their cellular phone, and to pay the bill for the electric utility company kilowatt-hour power usage to recharge them. All of these injuries are particularized and specific to Plaintiffs and will be the same injuries suffered by each Plaintiff.

B.  The "Traceable to the Conduct of Defendants" Prong

The second prong required to establish standing at the pleadings phase is that Plaintiffs must allege facts to show that their injury is traceable to the conduct of Defendants. In the instant case, this prong is met by the fact that the calls to

---

[3] Exact copy of web page in 2015:
https://web.archive.org/web/20151109045712/http://www.antonewing.com:80/contact

18cv

Plaintiff's cellular phone and home phone (land line) were placed either by

Defendants directly, or by Defendants' agent at the express direction and control of

Defendants.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten

factor test[4] from the 9th Circuit and Civil code §2307.

C. The "Injury is Likely to be Redressed by a Favorable Judicial Opinion"

Prong

The third prong to establish standing at the pleadings phase requires Plaintiffs

to allege facts to show that the injury is likely to be redressed by a favorable

judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a

request for damages for each call made by Defendants, as authorized by statute in

47 U.S.C. § 227. The statutory damages were set by Congress and specifically

redress the financial damages suffered by Plaintiff. Furthermore, Plaintiff's Prayers

for Relief request injunctive relief to restrain Defendants from the alleged abusive

practices in the future. The award of monetary damages and the order for

injunctive relief redress the injuries of the past and prevent further injury in the

future. Because all standing requirements of Article III of the U.S. Constitution

---

[4] 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

COMPLAINT- 18

have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiffs

have standing to sue Defendants on the stated claims.

> "…[C]ourts in the Ninth Circuit have held that "allegations of
> nuisance and invasions of privacy in TCPA actions are
> concrete" injuries that establish standing. See *Mbazomo v.
> ETourandtravel, Inc*., 16-CV-2229-SB, 2016 U.S. Dist.
> LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8,
> 2016).  In *Mbazomo*, the court held that a violation of the
> TCPA represents a concrete injury because "[t]he history of
> sustaining claims against both unwelcome intrusion into a
> plaintiff's seclusion and unceasing debt-collector harassment
> are squarely 'harm[s] that [have] traditionally been regarded as
> providing a basis for a lawsuit.'" Mbazomo, 2016 U.S. Dist.
> LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*,
> 136 S.Ct. at 1549-50). The court declined to follow Romero,
> explaining that Romero "improperly erodes the pleading
> standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need
> only] plausibly tie the alleged acts of the defendant to the
> alleged harms suffered." Id.

*Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV
16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

32.    "To establish injury in fact, a plaintiff must show that he or she suffered 'an

invasion of a legally protected interest' that is 'concrete and particularized' and

'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting

*Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite

distinct from particularization. *Id.* An injury is "particularized" if it affects "the

plaintiff in a personal and individual way." *Id.* In addition, for an injury to be

"concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.*

However, an injury need not be "tangible" in order to be "concrete," and intangible

injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an

intangible harm constitutes injury in fact, *Spokeo* provided two factors to be

considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1)

whether the statutory violation bears a 'close relationship to a harm that has

traditionally been regarded as providing a basis for a lawsuit in English or

American courts,' and (2) congressional judgment in establishing the statutory

right, including whether the statutory right is substantive or procedural." *Matera v.

Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016).

*Spokeo* also held that "the violation of a procedural right granted by statute can be

sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at

1549.  In such a case, a plaintiff "need not allege any additional harm beyond the

one [the legislature] has identified." *Id.*

33.    The TCPA provides a private right of action for violations of § 227(b) and

the associated regulations. 47 U.S.C. § 227(b)(3).  Subsection (b) prohibits calls

(other than for an emergency) to a telephone number assigned to a cellphone by

way of an automatic telephone dialing system ("ATDS") without the prior express

consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).  In the Ninth Circuit, a

plaintiff must show: (1) "the defendant called a cellular telephone number; (2)

"using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). A plaintiff must also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

34.     First, a text message and a prerecorded robotic voice message call are both a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009). Plaintiffs support these allegations with activity logs from July 2018 to August 2018 documenting the 15 calls. This element is satisfied.

35.     Second, Plaintiffs adequately plead use of an automatic telephone dialing system ("ATDS"). The TCPA defines ATDS to mean "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this function. *See Satterfield*, 569 F.3d at 951. "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* Defendants called with a prerecorded message, which, by definition requires an auto-dialer that operates without human intervention.

36.   "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the defendant used without the benefit of discovery." *Charkchyan,* 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.  For example, in *Charkchyan,* the plaintiff's allegations supported the use of an ATDS. *Id.*  In that case, the plaintiff described the messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally scripted. *Id.*  This was enough to establish the defendant used an ATDS. *Id.*   Similarly, in *Kramer v. Autobytel,* the plaintiff alleged sufficient facts to support a reasonable inference that the defendants used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code registered to [a defendant]. The messages were advertisements written in an impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with the Defendants." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . . frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015). *See also Daniels v. ComUnity Lending, Inc.,* No. 13cv488-WQH-JMA, 2014 U.S. Dist. LEXIS 1606, 2014 WL 51275, at *5 (S.D.

Cal. Jan. 6, 2014) (ATDS use not plausible because the allegations indicated the defendants directed calls specifically towards the plaintiff).

37.     Here, Plaintiffs allege that Defendants contacted them using a "telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiffs allege sufficient additional facts. First, each of the calls are provided to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiffs personally and they advertise timeshare sales. Third, Plaintiffs declare that they have never heard of Defendants, visited any location operated by Defendants prior to the harassing and annoying calls, nor provided their cellular telephone numbers to Defendants or consented to receive calls from Defendants. Plaintiffs also have had no prior business relationship with Defendants.  Plaintiffs had no reason to be in contact with Defendants nor have they ever purchased any kind of timeshare. Plaintiff's allegations are sufficient to establish that Defendants used ATDS in sending their prerecorded solicitation messages.

38.     Third, Plaintiffs adequately plead that the conduct was without their prior express consent. "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. Moreover, "[t]he Federal Communications Commission ('FCC'), tasked with instituting implementing

regulations for the TCPA, added an express *written* consent requirement in the case of messages that 'include[] or introduce[] an advertisement or constitute[] telemarketing.'" *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47 C.F.R. § 64.1200(a)(2)).  An "advertisement" includes "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).  "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(12).  Establishing prior express consent of the called party "is an affirmative defense for which the defendant bears the burden of proof." *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

39.    In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any location operated by [the defendant]; and (4) he [had] never provided his cellular number to [the defendant], nor consented to receiving calls from [the defendant]." *Id.*  Where the defendant failed to provide any conflicting evidence, this was sufficient. *Id.*

40.    Similarly, in Plaintiff's case, the allegations establish that they did not give prior express consent.  They declare that they were "the regular user and subscriber to the cellular telephone number at issue."  They also declare that they have "never heard of [Defendants], visited any location operated by [Defendants], provided [his] cellular telephone number to [Defendants,] or consented to receive text messages from [Defendants]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that they did not give prior express consent authorizing Defendants to send the prerecorded messages. Furthermore, the calls promote the sender's illegal Google listing services and fall within the FCC's definition of an advertisement and/or telemarketing. Thus, express written consent was required, and there is no evidence of such. This element is consequently satisfied.

41.    Fourth, Plaintiffs sufficiently plead that they were the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here, Plaintiffs declare that they were "the regular user and subscriber to the cellular phone number" that received the calls and messages.  Plaintiff are therefore the

"called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. *Drew v. Defendants Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *11-16 (N.D. Cal. Apr. 18, 2016)

42.     Plaintiffs were illegally called for telemarketing purposes by SHOREPOINTE staff, employees or agents thereof, including one person named Carmela Reyes.

**JURISDICTION TO HEAR THIS COMPLAINT IN FEDERAL COURT**

43.     Both Plaintiffs bring this action for multiple violations of California's Privacy Act and California Penal §630, et seq. by Defendant Shorepointe and Clairmont as hereinafter described.  Defendants have violated 48 U.S. C. §227 and therefore this Court has jurisdiction pursuant to the federal questions raised herein. *Mims v. Arrow Fin. Servs.,* LLC, 132 S. Ct. 740 (2012).

44.     "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdiction analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing *Panavision*, 141 F.3d at 1320). Due process requires that Defendants must have

18cv

minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

45.    There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal citations omitted).  To establish specific jurisdiction, Plaintiffs must show: "(1) [t]he non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avail[ed] [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* at 802.  At least two courts in

18cv

the 9th have found specific jurisdiction in circumstances similar to this case. One court found personal jurisdiction where the out-of-state defendant sent numerous unsolicited fax advertisements to a California-based plaintiff. *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-10 (N.D. Cal. Jan. 5, 2009). Another court found personal jurisdiction where the defendant operated a website that the California-plaintiff used, called and emailed the plaintiff numerous times, and the plaintiff's claims arose out of those contacts. *Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist. LEXIS 177166, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013). *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *4-7 (N.D. Cal. Apr. 18, 2016)

46.     Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiffs reside in the County of San Diego, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## Standard Applicable to a Preliminary Injunction

47.     To demonstrate his entitlement to a preliminary injunction, Plaintiff EWING must show (a) that he will suffer irreparable harm and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to

make them a fair ground for litigation and a balance of hardships tipping decidedly

in Plaintiffs' favor.

48.     This Court has personal and subject matter jurisdiction and venue over

federal law claims and may hear pendent state law violations.

49.     The Court is requested to enter an order for preliminary injunction to

prohibit Defendants from calling or spamming Plaintiff and to prohibit Defendants

from selling his personal confidential information to third parties.

## GENERAL ALLEGATIONS & CORPORATE BACKGROUND

50.     Plaintiff Anton Ewing is a U.S. citizen and a resident of the City of San

Diego, County of San Diego, State of California.

51.     The California Real Estate Department shows that Clairmont is not under

any broker and cannot engage in selling real estate, including timeshares.

| License Type: | SALESPERSON |
| Name: | Clairmont, Frederick Jr |
| Mailing Address: | 2781 MATTE LN |
| | VISTA, CA 92081 |
| License ID: | 01474235 |
| Expiration Date: | 01/13/21 |
| License Status: | LICENSED NBA |
| Salesperson License Issued: | 01/14/05 |
| Former Name(s): | NO FORMER NAMES |
| Employing Broker: | NO CURRENT EMPLOYING BROKER |

52.     Defendant Shorepointe is a limited liability company formed by the

Secretary of State of California and is registered to do business in California at all

18cv

times relevant to this case.   Shorepointe does not have a California telemarketing license even though it sells timeshares to California residents.   Shorepointe purposefully directed its activities into California and has availed itself of the benefits and protections of California law.  This action arises out of Defendants' violations of California's Invasion of Privacy Act, Cal. Penal Code §630, *et seq.* ("CIPA"), which prohibits the recording of confidential communications without the consent of all parties to the conversation and the Telephone Consumer Protection Act, 47 U.S.C. §227.

53.    During the period relevant herein, which is July 3, 2017 and continuing presently, Defendant Shorepointe was and continues to be the agent of Defendant Clairmont for purposes of setting aside the corporation's veil of liability protection. Because Defendant Clairmont has disregarded and disrespected the corporation (LLC) and all of its required formalities of operation, as well as the fact that Clairmont has used and employed Shorepointe to commit multiple criminal acts, including but not limited to 47 USC §501, California Penal Code §632, 18 USC §1343, then Clairmont cannot hide behind the corporation.   Clairmont is attempting to evade personal liability by using Shorepointe to commit his crimes as described herein.

54.    On August 3, 2018, Defendant Shorepointe, or one of its employees, agents or contractors at its direction and control, called Plaintiff Ewing from telephone

number 323-989-3378, on Plaintiff's personal cellular telephone at 619-719-9640

for which Ewing has expressly informed the public to not make solicitation calls

via National Do-Not-Call list registration as well as other public warnings.  A

personal cellular phone is not even required to be listed on the National Do-Not-

Call list in order to receive protection from spam telemarketers.

55.    During the period relevant herein, Shorepointe and Clairmont were a

provider of information technology and centralized operational and back-end

support services to Shorepointe and all of its subsidiaries. As such, Shorepointe,

provided the infrastructure for dialing and recording the calls at issue in this

litigation.  Shorepointe used Automated Telephone Dialing Systems and recording

devices at the direction of the Shorepointe officers, and its relevant subsidiaries.

Shorepointe also managed the call centers and telephone architecture and

telephone recordings for the enterprise, and its subsidiaries, including Defendant

Shorepointe and Clairmont.  Defendant Shorepointe is technologically

sophisticated and Defendant Shorepointe employs this high level of knowledge and

know-how to run its criminal syndicate.

56.    Moreover, Shorepointe continues to monitor and record telephone calls to

California residents, including Plaintiffs.

57.   During the relevant period herein, thousands of telephone calls with individuals in California were recorded by Shorepointe telephone systems at the direction of each of the other Defendants.

58.   Defendant Shorepointe is located in California.

59.   Defendant Shorepointe owned the call centers that were used to make the non-consensual recordings of confidential communications that are at the core of this matter.  Shorepointe also supervised and conducted the internal affairs and daily business operations of Defendant Shorepointe in such a way as to treat all of its subsidiaries, including Shorepointe, as if it did not exist by engaging in conduct, acts or omissions including controlling Shorepointe and its employees and agents to such a degree as to render Shorepointe a mere instrumentality of Defendant Clairmont.  These calls crossed state lines and thus constitute the predicate act of wire fraud in that Defendants used the telephone infrastructure of the United States to commit their interstate criminal activities that were continuous and ongoing for several years.  Plaintiff were also denied the right to honest services by Defendants when the Defendant lied and harassed Plaintiffs on said calls.  Defendant Shorepointe is also in the business of illegally selling lists of names of persons on the National Do-Not-Call list so that those persons get and receive calls from spammers and telemarketers.  Defendant Shorepointe knows that all of the calls made are recorded without permission or proper disclosure of the recording.  S

Shorepointe has also feloniously failed to register as a telemarketer in violation of B&P §17511.9.

60.     Plaintiffs are informed and believe, and therefore allege, that Defendant Shorepointe's comprehensive right to control is sufficient to meet the agency standard under California law.  See Civil Code §2307.

61.     During the relevant period described herein, Defendants each aided and abetted, encouraged and rendered substantial assistance to each other in furthering the CIPA violations.  In addition to acting on their own behalf individually, Defendants, each of them, are and were acting as the agent, servant, employee, joint venturer, and representative of, and with the knowledge, consent and permission of, and in concert with the other defendants.  The actions of the defendants as described in this Complaint all fall within the course, scope, and authority of the agency, service, and employment relationships that exist between the Defendants, and as such, create joint ventures between all of the defendants to the extent that binding legal relationships do not already exist. The actions and representations of Defendants constitute a conspiracy on the part of Defendants for the purpose of such actions and representations made to the Plaintiffs of this cause of action.  Plaintiffs are entitled to engage in discovery to obtain admissible evidence to prove to the jury that Defendants have knowingly and intentionally committed the torts and crimes alleged herein.

## FACTUAL ALLEGATIONS REGARDING CONFIDENTIAL

## TELEPHONIC COMMUNICATIONS WITH PLAINTIFF

62.    On July 26th, 29th and August 3rd and 4th, 2018, Plaintiff Ewing was called by Shorepointe Defendants.  Shorepointe engaged Plaintiff Ewing in confidential telephone communications.  To the best of Plaintiff Ewing's recollection, he spoke to Shorepointe Defendants' personnel several times in addition to being called by the Shorepointe robotic Echo system.  On any of the occasions when he spoke telephonically with Shorepointe Defendants' personnel, Plaintiff Ewing was not advised at the outset of the calls that the calls might be recorded by Shorepointe Defendants.  In light of the sensitive nature of the personal and confidential information being discussed during the telephone calls, Plaintiff Ewing had an objectively reasonable expectation of privacy in that he reasonably expected that the conversations were not being overheard, monitored and/or recorded. Defendant Shorepointe refused to provide Plaintiff with a written copy of its Do-Not-Call policy and refused to take Ewing's name and number off their telemarketing list.

## DEFENDANTS' IMPROPER AND ILLEGAL

## RECORDING POLICIES AND PRACTICES

63.    Defendants' policies and practices, during the period relevant herein and continuing to the present were to record confidential telephonic communications

18cv

with California individuals without advising them at the outset of each telephone call that it is being recorded, in violation of California Penal Code §630, *et seq.*

64.     Shorepointe and Defendant Clairmont did not obtain consent to record any of the telephone conversations prior to the time they recorded the calls.

65.     Shorepointe and Defendant Clairmont designed and implemented an extensive call center system for the thousands of consumer transactions serviced by its various affiliates and subsidiaries.  During the times relevant to the CIPA claims made herein, the system included two domestic and international call centers from which customer calls are placed and received on behalf of Shorepointe business units.

66.     Shorepointe and Defendant Clairmont operated, implemented and managed the architecture and infrastructure necessary to meet the call recording strategies set by Shorepointe and Defendant Clairmont.  At the direction of the relevant business unit subsidiary of Shorepointe and Defendant Clairmont, their infrastructure dialed telephone numbers to California individuals and recorded the telephone calls.  At each call center, Defendant Shorepointe and Defendant Clairmont used databases and servers to store and retrieve the recordings.

67.     Shorepointe and Defendant Clairmont continued to maintain call centers and oversee recordings in connection with their line of business.  Plaintiffs will seek, demand and argue for punitive damages at trial herein to send a message to

18cv

Defendants and others similarly situated that violation of California's criminal and federal stalking, terrorism and harassment laws are not allowed.

68.     The central Automated Telephone Dialing System ("ATDS") was, and currently continues to be, used by Defendants to initiate up to 1,000 calls a day.

69.     Defendants together strategically managed the ATDS to maximize resources; i.e., by employing a consistent process across the businesses for determining how and when calls would be made through the ATDS and scoring or rating the calls for advance treatment through the ATDS.

70.     Shorepointe's businesses directly loaded customer information onto Shorepointe's "mainframe" or "back-end" computer system, which includes the ATDS.  During the day, accounts would be loaded into dialer tables, and the tables would then be run through the dialer.  Once the ATDS would initiate the call, and a customer would answer, Shorepointe's "automated call distributor" would then route the call to an available agent.  Plaintiffs Ewing and Stark were physically present in California during each and every illegally recorded telephone conversation alleged herein.  At the same time the call was routed, the agent received the customer's information on a computer screen.  If a recording of the telephone communications was going to be made by the recording system, the recording would begin when the Shorepointe agent picked up the call.  The agents do not have the ability to stop or start call recording.  The agents do not know

which calls are being recorded.  An employee of Shorepointe stated that all calls are recorded at the end of the conversation and there is no warning or disclosure of such recording to the consumer at the beginning.

71.    With respect to whether the telephone agents themselves provide the call recipients with a verbal advisement that the call may be recorded, Defendants admit to a policy whereby the agents do not provide any advisement to customers that the calls are being recorded.

72.    For calls related to Shorepointe, Defendants are required, pursuant to California Penal Code §630 et seq., to give a verbal advisory that the call is being recorded before speaking to a customer.

73.    CIPA prohibits the recording of communications without first obtaining the consent of all parties to the conversation. Cal. Penal Code §632. PC §632.7 does not require that a communication be confidential in order to be provided protection from interception or recording. The text of the section notably contains no reference to "confidential communications;" moreover, more than just confidential communications are protected.  All communications that are recorded without the consent of both parties to the communication are protected.  Plaintiffs are suing for

Defendant's illegal recording of calls to their cellular phones which is expressly provided for in PC §632.7.[5]

74.     The right protected by Section 632 is not against the betrayal of a party's confidence by the other party. Rather, Section 632 protects against simultaneous dissemination to an unannounced second auditor without the party's consent.  Any communication, regardless of the intimacy of the facts discussed, that is recorded devoid of notice of recordation, is a violation of California law.

75.     Under California law, the term "confidential communication" includes any communication carried on in circumstances that may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. Cal. Pen. Code §632(c).   In other words, a communication is confidential "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard."

76.     In light of the sensitive nature of the personal financial and related information being discussed in the calls with Defendants, Plaintiffs had an objectively reasonable expectation of privacy – in that Ewing and Stark reasonably

---

[5] Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two **cellular** radio telephones, a **cellular** radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a **cellular** radio telephone, shall be punished by a fine

COMPLAINT- 38

counsel, where hired, is also entitled to attorneys' fees and costs pursuant to Cal. Civ. Proc. Code §1021.5.

74.     Pursuant to California Penal Code §637.2(b), Plaintiffs also seeks a preliminary and permanent injunction to restrain Defendants from committing further violations of CIPA and to prohibit and prevent Defendants from making future death threats to Plaintiffs and their families.

75.     Pursuant to California Penal Code §637, Defendants have willfully disclosed the contents of Plaintiff's telephonic communications to a third party without Ewing's and Stark's consent.

## VIOLATION OF 47 U.S.C. §227 DO NOT CALL REGISTRY

87.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

88.     47 C.F.R. 64.1200(c)(2) prohibits calling any number on the national Do-Not-Call Registry.  47 C.F.R. 64.1200(a)(1)(iii) states that no person or entity may initiate any commercial purpose telephone call to any cellular telephone that is already on the national Do-Not-Call Registry.  Plaintiffs and Defendants do not and did not ever have any pre-existing or established business relationship at any time.  Defendants are not a tax-exempt nonprofit organization or a political organization.

89.     Defendants do not have a Do-Not-Call database.  Defendants refused to identify themselves upon request by Plaintiff.   Defendants refused to put Plaintiffs on their Do-Not-Call list.  Defendants used and employed an automated dialer to call Plaintiffs.

90.     Defendants do not have a Do-Not-Call policy that is written.

91.     Defendants refused to provide Plaintiffs with a written copy of any Do- Not-Call policy.

92.     Defendants do not scrub their call lists against the National Do-Not-Call list or registry.

93.     Defendants do not have any personal relationship with Plaintiffs.

94.     Defendants refused to provide the full name of the caller on the telephone who initiated the call.

95.     Defendants refused to provide a telephone number or address at which the Defendants could be contacted.

96.     Defendants knowingly and willfully violated the automated-call requirements under 47 U.S.C. §227(b)(3) and willfully and knowingly violated the Do-Not-Call list requirements under 47 U.S.C. §227(c )(5).  *Charvat v. NMP, LLC* (2001, CA6 Ohio) 656 F.3d 440 holds that Plaintiffs may recover both $1500 statutory damages awards even if both violations occurred in the same telephone call.

99.     Plaintiffs further allege that Defendant Frederick Clairmont, Jr., Defendant Shorepoint Partners, LLC., have violated the Telephone Consumer Protection Act, 47 USC §227(b)(1)(A) and 16 CFR Part 310, by illegally calling Plaintiff's cellular telephone number 619-719-9640 and 619-347-0726 to solicit and sell.

100.    Plaintiffs have each been injured in the business and property as a direct and foreseeable result of the Defendant's telemarketing activities.

101.    Defendant Shorepointe, along with the employees and contracted agents of Defendant Shorepointe, owed a duty of care, a duty of honesty, and a duty of loyalty as well as a fiduciary duty (found in every client-customer relationship wherein confidential and private information is exchanged), to Plaintiffs when Shorepointe called Plaintiffs to sell its scams.  Those above stated duties, and each of them, were breached by Defendants, including Defendant Shorepointe, when their employees and agents illegally, and criminally, called Plaintiffs by violating 47 USC section 501[6] and 227(b)(1)(A) and (c)(5), as well as the Telemarketing Sales Rule (16 CFR Part 310).  Additionally, Defendants breached said duties when they, and their agents and employees, illegally, and with criminal *mens rea*, secretly recorded the solicitation calls they made to Plaintiffs in violation of California Penal Code section 632, 637.2 and 632.7 as well as violation of Civil Code section 1770(a)(22).

---

[6] Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this chapter prohibited or declared to be unlawful, or who willfully and knowingly omits or fails to do any act, matter, or thing in this chapter required to be done, or willfully and knowingly causes or suffers such omission or failure, shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided in this chapter, by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment, jointly and severally, against Defendants Shorepointe Partners, LLC, a California limited liability company, and Frederick Clairmont, Jr. as follows:

A.      For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2); $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

B.      For punitive damages in an amount to be determined with exactness at trial herein;

C.      For an injunction prohibiting Defendants from calling Plaintiffs ever again;

D.      For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

E.      For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5;

F.      For pre- and post-judgment interest at the legal rate;

G.     For an injunction prohibiting Defendants from ever contacting Plaintiffs ever again in any manner whatsoever, including spam texting;

H.     $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

I.     $1,500 for each violation of 47 CFR §64.1601(3)  caller ID spoofing;

J.     $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

K.     $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

L.     $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

M.     $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

N.     $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone number on the DNC registry; and

O.     For any other relief that the Court deems just and proper.


# DEMAND FOR JURY TRIAL

Plaintiff is entitled to and demands a trial by jury for all claims so triable.

This is a verified Complaint and all statements and declarations herein are true and correct to the best of my knowledge, information and belief.

18cv

Dated this 4th day of August, 2018

/s/ *Collette Stark*
Collette Stark,
Plaintiff in pro per

/s/ *Anton Ewing*
Anton Ewing,
Plaintiff in pro per

COMPLAINT- 46

18cv

# EXHIBIT A

george@viamari.com 🔍   abuse@web.com 🔍   no.valid.email@worldnic.com 🔍

```
Domain Name: VIAMARI.COM
Registry Domain ID:
Registrar WHOIS Server: whois.networksolutions.com
Registrar URL: http://networksolutions.com
Updated Date: 2015-01-13T20:53:58Z
Creation Date: 2007-01-11T18:59:31Z
Registrar Registration Expiration Date: 2016-01-11T05:00:00Z
Registrar: NETWORK SOLUTIONS, LLC.
Registrar IANA ID: 2
Registrar Abuse Contact Email: abuse@web.com
Registrar Abuse Contact Phone: +1.8003337680
Reseller:
Domain Status: clientTransferProhibited
Registry Registrant ID:
Registrant Name: ViaMari
Registrant Organization: ViaMari
Registrant Street: 701 palomar airport rd 300
Registrant City: carlsbad
Registrant State/Province: CA
Registrant Postal Code: 92011
Registrant Country: US
Registrant Phone: 7608030010
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: no.valid.email@worldnic.com
Registry Admin ID:
Admin Name: ViaMari
Admin Organization: ViaMari
Admin Street: 701 palomar airport rd 300
Admin City: carlsbad
Admin State/Province: CA
Admin Postal Code: 92011
Admin Country: US
Admin Phone: 7608030010
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: george@VIAMARI.COM
Registry Tech ID:
Tech Name: ViaMari

Tech Organization: ViaMari
Tech Street: 701 palomar airport rd 300
Tech City: carlsbad
Tech State/Province: CA
Tech Postal Code: 92011
Tech Country: US
Tech Phone: 7608030010
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: george@VIAMARI.COM
Name Server: NS65.WORLDNIC.COM
Name Server: NS66.WORLDNIC.COM
DNSSEC: not signed
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/
```

# EXHIBIT B

**2 0 0 8 0 2 6 1 0 2 6 8** File #



LLC-5

## State of California
## Secretary of State

**FILED**
In the office of the Secretary of State
of the State of California

**JAN 2 4 2008**

### LIMITED LIABILITY COMPANY
### APPLICATION FOR REGISTRATION

A $70.00 filing fee AND a certificate of good standing from an authorized
public official of the jurisdiction of formation must accompany this form.

**IMPORTANT – Read instructions before completing this form.**

This Space For Filing Use Only

---

**ENTITY NAME** (End the name in item 1 with the words "Limited Liability Company," or the abbreviations "LLC" or "L.L.C." The words "Limited" and "Company" may be abbreviated to "Ltd." and "Co.," respectively.)

1. NAME UNDER WHICH THE FOREIGN LIMITED LIABILITY COMPANY PROPOSES TO REGISTER AND TRANSACT BUSINESS IN CALIFORNIA

   ViaMari Partners, LLC

2. NAME OF THE FOREIGN LIMITED LIABILITY COMPANY, IF DIFFERENT FROM THAT ENTERED IN ITEM 1 ABOVE

---

**DATE AND PLACE OF ORGANIZATION**

3. THIS FOREIGN LIMITED LIABILITY COMPANY WAS FORMED ON   07 - 31 - 07   IN   Delawawra
   (MONTH) (DAY) (YEAR)   (STATE OR COUNTRY)

   AND IS AUTHORIZED TO EXERCISE ITS POWERS AND PRIVILEGES IN THAT STATE OR COUNTRY.

---

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and both items 4 and 5 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and item 4 must be completed (leave item 5 blank).

4. NAME OF AGENT FOR SERVICE OF PROCESS

   Corporate Creations Network Inc. [C2250455]

5. IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA   CITY   STATE   ZIP CODE
   CA

---

**APPOINTMENT** (The following statement is required by statute and should not be altered.)

6. IN THE EVENT THE ABOVE AGENT FOR SERVICE OF PROCESS RESIGNS AND IS NOT REPLACED, OR IF THE AGENT CANNOT BE FOUND OR SERVED WITH THE EXERCISE OF REASONABLE DILIGENCE, THE SECRETARY OF STATE OF THE STATE OF CALIFORNIA IS HEREBY APPOINTED AS THE AGENT FOR SERVICE OF PROCESS OF THIS FOREIGN LIMITED LIABILITY COMPANY.

---

**OFFICE ADDRESSES** (Do not abbreviate the name of the city.)

7. ADDRESS OF THE PRINCIPAL EXECUTIVE OFFICE   CITY AND STATE   ZIP CODE

   701 Palomar Airport Road Suite 300   Carlsbad, CA   92011

8. ADDRESS OF THE PRINCIPAL OFFICE IN CALIFORNIA, IF ANY   CITY   STATE   ZIP CODE
   CA

---

**EXECUTION**

9. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

   Jan 25th 2008
   DATE

   SIGNATURE OF AUTHORIZED PERSON

   GEORGE SCHNELL
   TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON

---

LLC-5 (REV 04/2007)   APPROVED BY SECRETARY OF STATE

# Delaware

PAGE   1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "VIAMARI PARTNERS, LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-THIRD DAY OF JANUARY, A.D. 2008.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "VIAMARI PARTNERS, LLC" WAS FORMED ON THE THIRTY-FIRST DAY OF JULY, A.D. 2007.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE NOT BEEN ASSESSED TO DATE.

4399326   8300

080075558

You may verify this certificate online
at corp.delaware.gov/authver.shtml

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 6331551

DATE: 01-23-08

20080261 0268

# EXHIBIT C

```
Domain Name: SHOREPOINTEPARTNERS.COM
Registry Domain ID: 2214393044_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.networksolutions.com
Registrar URL: http://www.networksolutions.com
Updated Date: 2018-01-17T19:35:55Z
Creation Date: 2018-01-17T19:35:46Z
Registrar Registration Expiration Date: 2019-01-17T05:00:00Z
Registrar: NETWORK SOLUTIONS, LLC.
Registrar IANA ID: 2
Registrar Abuse Contact Email: abuse@web.com
Registrar Abuse Contact Phone: +1.8003337680
Reseller:
Domain Status:
Registry Registrant ID:
Registrant Name: ViaMari
Registrant Organization: ViaMari
Registrant Street: 701 PALOMAR AIRPORT RD STE 300
Registrant City: CARLSBAD
Registrant State/Province: CA
Registrant Postal Code: 92011-1028
Registrant Country: US
Registrant Phone: +1.7608030010
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: george@VIAMARI.COM
Registry Admin ID:
Admin Name: ViaMari
Admin Organization: ViaMari
Admin Street: 701 PALOMAR AIRPORT RD STE 300
Admin City: CARLSBAD
Admin State/Province: CA
Admin Postal Code: 92011-1028
Admin Country: US
Admin Phone: +1.7608030010
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: george@VIAMARI.COM
Registry Tech ID:
Tech Name: ViaMari
Tech Organization: ViaMari
Tech Street: 701 PALOMAR AIRPORT RD STE 300
Tech City: CARLSBAD
Tech State/Province: CA
Tech Postal Code: 92011-1028
Tech Country: US
Tech Phone: +1.7608030010
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: george@VIAMARI.COM
Name Server: NS23.WORLDNIC.COM
Name Server: NS24.WORLDNIC.COM
DNSSEC: Unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/

https://www.icann.org/resources/pages/epp-status-codes-2014-06-16-en.
```

# EXHIBIT D



**Secretary of State**
**Statement of Information**
(Limited Liability Company)

**LLC-12**

18-A04423

# FILED

In the office of the Secretary of State
of the State of California

**JAN 04, 2018**

**IMPORTANT —** Read instructions **before completing this form.**

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

This Space For Office Use Only

| 1. Limited Liability Company Name (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.) |
|---|
| SHOREPOINTE PARTNERS, LLC |

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 201719110469 | CALIFORNIA |

**4. Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>5055 Avenida Encinas Suite 100 | Carlsbad | CA | 92009 |
| b. Mailing Address of LLC, if different than item 4a<br>5055 Avenida Encinas Suite 100 | Carlsbad | CA | 92009 |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box<br>5055 Avenida Encinas Suite 100 | Carlsbad | CA | 92009 |

**5. Manager(s) or Member(s)**

If no managers have been appointed or elected, provide the name and address of each member. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Frederick | Clairmont | Jr. | |

| b. Entity Name - Do not complete Item 5a |
|---|
| |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 5055 Avenida Encinas Suite 100 | Carlsbad | CA | 92009 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only.  Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | State<br>CA | Zip Code |
|---|---|---|---|
| | | | |

**CORPORATION** – Complete Item 6c only.  Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| LEGALZOOM.COM, INC. (C2967349) |

**7. Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| consulting |

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9. The Information contained herein, including any attachments, is true and correct.**

| 01/04/2018 | Cheyenne Moseley | Asst. Sec., LegalZoom.com, Inc., OBO filing entity |
|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title   Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

| Attachment to **Statement of Information** (Limited Liability Company) | **LLC-12A Attachment** | 18-A04423 |

**A.   Limited Liability Company Name**

SHOREPOINTE PARTNERS, LLC

This Space For Office Use Only

| **B.   12-Digit Secretary of State File Number** | **C.   State or Place of Organization** (only if formed outside of California) |
|---|---|
| 201719110469 | CALIFORNIA |

**D.   List of Additional Manager(s) or Member(s) -** If the manager/member is an individual, enter the individual's name and address.   If the manager/member is an entity, enter the entity's name and address.  Note:  The LLC cannot serve as its own manager or member.

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Ralph | A. | Medeiros Jr. | |
| Entity Name | | | |
| | | | |
| Address | City (no abbreviations) | State | Zip Code |
| 5055 Avenida Encinas Suite 100 | Carlsbad | CA | 92009 |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| | | | |
| Address | City (no abbreviations) | State | Zip Code |
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| | | | |
| Address | City (no abbreviations) | State | Zip Code |
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| | | | |
| Address | City (no abbreviations) | State | Zip Code |
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| | | | |
| Address | City (no abbreviations) | State | Zip Code |
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| | | | |
| Address | City (no abbreviations) | State | Zip Code |
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| | | | |
| Address | City (no abbreviations) | State | Zip Code |
| | | | |

RECRUITER LITE                    PROJECTS   CLIPBOARD   JOBS   REPORTS   MORE

Start a new search                                        Advanced · Saved / History

Message successfully sent to Ralph Medeiros!



## Ralph Medeiros
**Project Director WorldMark by Wyndham Sonoma**
Windsor, California | Real Estate

Previous positions
Director of Member Relations, Welk Resorts at Welk Resorts
Vice President of Member Sales and Marketing at The Villa Group

[ Send InMail ▾ ]   [ Add to clipboard ]

500+

📇 Contact Info    ✏ Edit                              Public Profile

### Recruiting Activity

There's no activity associated with this profile.

### Background

#### Experience

### Project Director
WorldMark by Wyndham
January 2016 – Present (2 years 7 months) | Sonoma, California

### Director of Member Relations, Welk Resorts
Welk Resorts
February 2013 – November 2015 (2 years 9 months) | Greater San Diego Area   

### Vice President of Member Sales and Marketing
The Villa Group
December 2008 – March 2012 (3 years 3 months) | Mexico

### Project Director, Newport Coast Marriott
Marriott Vacations Worldwide Corporation
November 2007 – December 2008 (1 year 1 month) | Newport Coast, CA   MARRIOTT VACATIONS WORLDWIDE

### Director of Sales, Westin Kaanapali Ocean Resort
Starwood Vacation Ownership
January 2004 – December 2007 (3 years 11 months) | Kaanapali Beach, Maui, Hawaii   

### Vice President of Sales and Marketing, Las Vegas
Pacific Monarch Resorts
January 2003 – January 2004 (1 year) | Las Vegas, Nevada Area

---

### Recruiting Tools

☆ 💼 🏷 📄 📎 🔔 ☰

#### Similar profiles


**Tim Gesner**
3rd
President at Paradise Bay Resort Company Limited (ALMA)
Orlando, Florida Area


**David Perlleshi**
3rd
Real Estate Investment
Charlotte, North Carolina


**Fred Beristain**
2nd
Senior Sales Management
Phoenix, Arizona Area


**Larry Torrence**
3rd
Project Director, Cottage Villages at Lake Hartwell
Greenville, South Carolina Area


**John Geissberger**
3rd
Vice President of Sales at Diamond Resorts™
Knoxville, Tennessee Area


**Ryan Cupps**
3rd
Project Director at Lendlease
Malibu, California


**Fares Halasa**
2nd
Director Of Operations at World Equestrian Center
Cincinnati, Ohio Area


**Fernando Polanco**
2nd
Multifamily Investment Sales
Miami/Fort Lauderdale Area

**Christian Gonzalez**
2nd
Project Director at Nestseekers
Greater New York City Area

**Hal Son Kien, PMP**
3rd
Commercial Real Estate Professional, Project Manager & IT Solutions Consultant
Washington D.C. Metro Area

+90                    More similar profiles




### Vice President of Sales and Marketing, Las Vegas

Wyndham Vacation Ownership
January 2002 – January 2003 (1 year) | Las Vegas, Nevada Area



### Senior Sales Manager, Hilton Las Vegas

Hilton Grand Vacations
September 1997 – January 2002 (4 years 4 months) | Las Vegas, Nevada Area

HILTON
GRAND VACATIONS

### Additional Info

**Contact for**
- Career opportunities
- Consulting offers
- New ventures
- Job inquiries
- Expertise requests
- Business deals
- Reference requests
- Getting back in touch

**Recruiting Tools**

### Skills & Expertise

| | |
|---|---|
| • Training | • Budgets |
| • Leadership | • Customer Service |
| • Hospitality Management | • Customer Satisfaction |
| • Sales | • Marketing |
| • Strategic Planning | • Sales Operations |
| • Trade Shows | • Contract Negotiation |
| • Sales Management | • Hotel Management |
| • Yield Management | • Marketing Strategy |
| • Negotiation | • Timeshare |
| • Hospitality | • Team Building |
| • Revenue Analysis | • Real Estate |
| • Public Relations | • Hotels |
| • Tourism | • Selling |
| • Hospitality Industry | • Market Planning |
| • Resorts | |

Following

## Companies



Welk Resorts



Forbes



Vistana Signature
Experiences

By using this site, you agree to LinkedIn's terms of use. Commercial use of this site without express authorization is prohibited.

LinkedIn Corporation ® 2016 | User Agreement | Privacy Policy | Copyright Policy | Support | Blog | Language | Send us your feedback

# EXHIBIT E

   

Q Search

Overseas expansion plans? - Take the guess work out of expanding your tech company overseas.   Ad  ···

John, become an ROI hero with LinkedIn a

 

Get started in minutes with $50 in
credits

Request $50 credit

## george Schoell · 3rd

CEO at ViaMari, LLC

Greater San Diego Area

ViaMari, LLC

See contact info

14 connections

Connect | View in Recruiter | ···

**People Also Viewed**

 **Shamesha Miller** · 3rd
Sales Coordinator at Sage Hospi

**Jay Hines** · 3rd
Account Specialist at Wyndham
Worldwide / RCI

 **Erin Rodriguez** · 3rd
Executive Office Administrator

 **Brian Rock** · 3rd
National Director at VacationGu

## Experience

CEO
ViaMari, LLC

 **Buddy Hughes** · 3rd
Hughes Reserves & Asset Mana:
LLC

 **Jason Trombley** · 3rd
Acupuncturist, Massage Therapi:
Personal Trainer

## Skills & Endorsements

**Marketing Strategy** · 1

Adam Hume has given an endorsement for this skill

**Aric Luis** · 2nd
Director Of Facilities at Grand Pa
Resorts

Jeff
Wilder  **Jeff Wilder** · 3rd
Independent software consultan
developer

Tere
sa
Szafran  **Teresa Szafranski** · 3rd
Project Manager at ABAT Builde

## Interests

ViaM
ari, LLC  **ViaMari, LLC**
12 followers

Heidi
Rustin  **Heidi Rustin** · 2nd
Major Accounts District Manage
Automatic Data Processing

Learn the skills george has

Setting Team and Em
Goals
Viewers: 30,991

**Employee**

Managerial Economic
Viewers: 28,757

Messaging

# EXHIBIT F



## ShorePointe Resort Club

Home     About     Contact     Presentation

# Contact Us

Name (required)

Your Email (required)

Your Message

Send

**EMAIL ADDRESS:**
info@shorepointeresort.com

**TELEPHONE NUMBER:**
208-264-0397

**SHOREPOINTE PHYSICAL ADDRESS:**
47390 Hwy. 200
Hope, ID 83836

**CARLSBAD HQ PHYSICAL ADDRESS:**
701 Palomar Airport Road

**Anton@AntonEwing.com**

| | |
|---|---|
| **From:** | seoresearchdata+caf_=anton=antonewing.com@gmail.com on behalf of Gifting Department <giftingdepartment2014@gmail.com> |
| **Sent:** | Friday, August 3, 2018 9:02 PM |
| **To:** | Toni Smithinson |
| **Subject:** | SHOREPOINTE CONFIRMATION LETTER |
| **Attachments:** | SHOREPOINTE CONFIRMATION LETTER.rtf |

# SHOREPOINTE PARTNERS

## 10650 Scripps Ranch # 212

## San Diego, CA 92131

Guest Name: Tony and Colette Stark
Congratulations!

Attached here is the confirmation letter for your Stated for your appointment on
August 06, 2018 (Monday) at 4:15 pm or 6:15 pm .Including the gifts that you will be receiving. But please arrived 15 minutes earlier. We are excited to see you here.

Best Regards,

## SHOREPOINTE PARTNERS

1



Appointment Confirmation LetterShorepointeConfirmation Code: TCM - 2018

Your presentation is at 10650 Scripps Ranch # 212 San Diego Ca 92131

Dear    Tony and Colette Stark

***Your scheduled date and time for your Presentation is***

***08/06/2018 @ ( 4:15 pm or 6:15 pm)***

Congratulations, on your upcoming visit to The Shorepointe Partners Preview Gallery. We are pleased you have decided to visit us, and we want to take this opportunity to confirm your scheduled appointment, as well as to offer additional information. This is our way of saying "Thanks" for taking the time to learn more about our great products! We are happy to provide you with this fabulous gift: 2AT + 3/2 acc.

- There is absolutely no obligation to join or buy anything to receive your gift package. The only thing required of you is your time and that you meet the requirements listed below; NO KIDS ALLOWED!

- Qualified Requirements: For a Guest to be deemed a Qualified Guest, the Guest must meet all the Qualifications established:

- • Couples must both be currently employed or retired and make $ 75,000 or more yearly combined

- Couples must be within the ages of 35 to 76.

- Co-Habs are OK with matching ID's

- Must carry a Major Credit Card and a Driver's License

- No Timeshare or Travel Club Employees may attend.


We look forward to meeting you!

# Shorepointe Partners

**Anton@AntonEwing.com**

| | |
|---|---|
| **From:** | seoresearchdata+caf_=anton=antonewing.com@gmail.com on behalf of Confirmation iCentral Reservations <confirmation@icentralreservations.com> |
| **Sent:** | Friday, August 3, 2018 6:04 PM |
| **To:** | seoresearchdata@gmail.com |
| **Subject:** | CONFIRMATION LETTER -Clinton & Sara White |
| **Attachments:** | Mr. & Mrs. Clinton & Sara White.doc |

Good day

Hi

**Clinton & Sara White,**

The attached document will serve as your invitation from **Shorepointe Partners .** It includes the reward details & the driving directions to our Showroom.

Here is our address:
**10650 Scipps Ranch Blvd #212 San Diego Ca,92131**

Here is your Confirmation Code:
**LAN1001**

Tour Date & Time: **Aug. 04, 2018 Saturday @ 12:00 PM.**
Please e-mail me back to let us know that you have received it and everything is clear. Please run through its contents carefully.
There is absolutely no obligation to buy or join anything to receive your vacation package.

We look forward to meeting you!

1



AT&T 9:07 PM



47



+1 (619) 329-3

UBLIGATIUN on your p

just only want you to ha

wonderful experience v

SHOREPOINTE PARTN

10650 Scripps Ranch #

San Diego, CA 92131

Guest Name: Tony and

Stark



**AT&T** 9:07 PM





+1 (619) 329-3

Text Messag

Today 8:14

Congratulations for you
upcoming visit. As we
promised that you will b
receiving a gift from us
absolutely NO COST a
OBLIGATION on your p

 AT&T 9:08 PM

 Recents



# Shore Point F

Angelena



message



call



WhatsA...

6

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS102971
Cashier ID: akukura
Transaction Date: 08/06/2018
Payer Name: Anton Ewing
------------------------------------
CIVIL FILING FEE
 For: Anton Ewing
 Case/Party: D-CAS-3-18-CV-001828-001
 Amount:        $400.00
------------------------------------
CASH
 Amt Tendered:  $400.00
------------------------------------
Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00


There will be a fee of $53.00
charged for any returned check.