FILED

OCT 3 1 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  Collette Stark
   2175 Cowley Way
2  San Diego, CA 92110
   619-347-0726
3  videosolutions@me.com

4  Anton Ewing
   3077 B Clairemont Drive #372
5  San Diego, CA 92117
   (619) 719-9640
6  anton@antonewing.com

7  Plaintiffs In Pro Per

8

9

10        THE UNITED STATES FEDERAL DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13  Collette Stark, an individual;          ) Civil Case No. 18-cv-1828-JAH-NLS
                                            )
14  Anton Ewing, an individual,            ) **FIRST AMENDED COMPLAINT**[1]
                                            )
15                                          )
              Plaintiffs,                   ) **I.    CIPA - PC §§637.2 & 632.7**
16                                          )
          vs.                               ) **II.   TCPA - 47 U.S.C. §227(b)**
17                                          )
                                            )
18  Shorepointe Partners, LLC, a California ) JURY TRIAL REQUESTED
19  limited liability company;              )
    Frederick Clairmont, Jr., as an         ) Courtroom: 13B
20  individual and officer of Shorepointe   ) District Judge:  Hon. John A. Houston
    Partners, LLC,                          ) Magistrate: Hon. Nita L. Stormes
21                                          )
22            Defendants.                   )
                                            )
23                                          )

24  _____

25

[1] Filed pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) within 21 days of service of the FRCP 12(e) motion.

FIRST AMENDED COMPLAINT- 1

18cv1828

## BACKGROUND

The original Complaint (ECF No. 1) was filed on 8/6/2018.  On 9/26/2018 Plaintiffs requested Entry of Clerk Default against Defendant Shorepointe Partners, LLC (herein "Shorepointe") (see ECF No. 6).  On 9/17/2018, Shorepointe filed a Statement of Information (SOS ID No. 18-D13287) with the California Secretary of State, updating the agent for service of process from Legalzoom.com, Inc. to Defendant Frederick Clairmont, Jr.  The biannual Statement of Information for Shorepointe was previously filed on 1/4/18 (SOS ID No. 18-A04423).  Shorepointe was formed on 7/23/2017 as entity 201719110469 and only requires a Statement of Information to be filed once every two years in **odd** numbered years.  Shorepointe failed to file an LLC-12 Statement of Information within 120 days of formation in 2017.  On 9/28/2018, the Clerk of the Court entered default as to Defendant Shorepointe Partners, LLC.  Notwithstanding, just one month later, on 10/29/2018, in ECF No. 8-1, PageID.103, Clairmont claims that "Shorepointe is currently defunct."  This averment to the Court by Clairmont is unbelievable.

## FIRST AMENDED COMPLAINT INTRODUCTION

Plaintiff Collette Stark and Plaintiff Anton Ewing, each proceeding pro se, (Collectively herein "Plaintiffs") hereby complain and allege against Defendant Shorepointe Partners, LLC, a California limited liability company (herein "SHOREPOINTE"), Defendant Frederick Clairmont, Jr., as an individual and as an officer, manager and member of Shorepointe Partners, LLC (herein "Clairmont") and owner of Shorepointe Partners, LLC.

The TCPA causes of action (47 USC §227(b)) filed herein for, *inter alia*,

illegal telemarketing to each Plaintiff's DNC[2] registered cellular phone through the use of an ATDS is expressly alleged against Defendants Shorepointe Partners, LLC, a California limited liability company and Defendant Clairmont,

The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal recording of the telemarketing calls to each Plaintiff's phone without disclosure of the recording is alleged against Defendants Shorepointe Partners, LLC, a California limited liability company and Defendant Clairmont.

## COMPLAINT

1.     Beginning on July 19, 2018, Plaintiff Ewing and Plaintiff Stark began to get inundated with telemarketing calls from Shorepointe Partners, LLC.  The telemarketers on solicitation calls refused to give out their personal address, location, phone number or email.  Plaintiffs had to play along with the telemarketing script that was being read to them.  Eventually, like all telemarketers, they had to disclose information enough for an appointment. Plaintiffs set an appointment and showed up at 10650 Scripps Ranch # 212 San Diego Ca 92131 on August 4, 2018 at 11: 58 AM.  Plaintiffs met with Frederick Clairmont Jr. and his wife.  They were selling timeshare and resort club memberships.  Clairmont said that he would provide the contact information of the lead source, but it turned out, the lead source is and was a boiler-room in the

---

[2] See do not call registry at www.donotcall.gov administered by the Federal Trade Commission.

Philippines that Clairmont set up to evade American privacy and telemarketing laws.

2.    On the below listed dates and times, Defendant Shorepointe Partners, LLC auto-dialed, using an ATDS with a prerecorded message, telemarketing calls to 619-347-0726 to Plaintiff Collette Stark's personal cell phone that she regularly and normally uses, which is registered on the national do not call registry at www.donotcall.gov, as follows:

> a.  July 19, 2018 at 3:41 PM from 702-536-9851
>
> b.  July 24, 2018 at 8:02 PM from 702-536-9851
>
> c.  July 30, 2019 at 4:41 PM from 702-536-9851
>
> d.  July 31, 2018 at 7:16 PM from 702-536-9851
>
> e.  July 31, 2018 at 7:26 PM from 702-536-9851
>
> f.  Text message on July 31, 2018, at 8:14 PM
>
> g.  Text message on July 31, 2018 at 9:07 PM

3.    Plaintiff Stark's phone number was registered by Stark on www.donotcall.gov on 2/13/2007, which is more than 31 days prior to any and all illegal calls mentioned herein.  All telemarketers are required to scrub their lead lists every 30 days.

4.    Phone numbers 530-744-2180 and 702-536-9851 belong to Defendant Shorepointe Partners, LLC.

FIRST AMENDED COMPLAINT- 4

5.      Shorepointe Partners, LLC is located at 5055 Avenida Encinas, Suite 100, Carlsbad, CA 92009 and is a "person" for TCPA purposes.

6.      Phone number 530-744-2180 and 702-536-9851 were used by Defendant Shorepointe Partners, LLC.

7.      Shorepointe also uses 760-230-8077 to run its business.

8.      George Schoell, runs Shorepointe Resort, LLC, an Idaho limited liability company.  Schoell claims he has nothing to do with Clairmont and his telemarketing operations.  Plaintiffs will take Schoell at his word for now but it truly seems like Schoell might be heavily involved with the telemarketing operations.  Plaintiffs reserve the right to name Schoell once discovery yields facts that pass muster under Rule 11.

9.      Plaintiff Stark requested that Defendant Shorepointe Partners, LLC stop calling her and send a copy of their Do Not Call policy to her on each and every call.

10.     Plaintiff Ewing was called by Shorepointe from 866-550-5058 on July 26, 2018 to solicit Ewing for a timeshare purchase.  The address given by the caller was 10650 Scripps Ranch #121, San Diego, CA 92131.  Ewing expressly told the agent on the phone to not text him.  Then, Shorepointe texted Ewing.  The text message from 323-989-3378 stated:

   a.   Hello! This is Laverne, Confirmation's Manager from SHOREPOINTE
        PARTNERS SAN DIEGO CA!  We would like to remind you with your

FIRST AMENDED COMPLAINT- 5

scheduled appointment to attend out 90 minute presentation Tomorrow Saturday Aug. 04, 2018 at 11:45 AM.  Gifts: 3D/2N Accommodations plus roundtrip airfare tickets Anywhere in Continental of US + $100 Dining Discount Card. Address: 10650 Scripps Ranch Blvd #212 San Diego Ca 92131. Claiming Code: LAN1001.  Toll Free #: 1-323-989-3378.  Please call to confirm you attendance. Thank You!

11.     Defendant Clairmont has unlawfully controlled, managed and directed the

criminal operations of Shorepointe and is therefore vicariously liable and liable

under alter ego theories of liability.  Clairmont cannot evade or avoid liability for

ordering, directing and instructing employees of Shorepointe to violate 47 USC

section 501 (a crime) to violating 47 USC §227(b)(1)(A).

12.     Shorepointe called Ewing on 619-719-9640.

13.     The Defendants, including Shorepointe and Clairmont, used a robo-dialing

telemarketing device known as an Automatic Telephone Dialing System to call

Plaintiffs.  The telephone device used by Defendants has the capacity of store

numbers and has the capacity to dial numbers automatically without human

intervention[3].

---

[3] Much like a machine gun has the capacity of shoot bullets in full auto mode or in semi auto mode.  Just because Defendants claim they used their ATDS machine gun in semi auto mode, it is still an ATDS with capacity for full auto, and therefore using said device is a violation of 47 USC §227(b)(1) at $1,500 per call.  This is in addition to the 47 USC §227(c) violations at $1,500 per call.

FIRST AMENDED COMPLAINT- 6

18cv1828

14.     Plaintiff Ewing requested that Defendant Shorepointe stop calling her and send a copy of their Do Not Call policy to her on each and every call.

15.     Additionally, Defendants left multiple pre-recorded messages on each of both Plaintiff's cell phones.  Plaintiffs have a full and complete recording of many of the harassing and annoying calls that violated California Penal Code §653m and will provide a true and accurate copy of the same to the Court.

16.     "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).  The Federal Communications Commission ("FCC")— which has authority to implement the TCPA's provisions, *see* 47 U.S.C. § 227(b)(2)— has stated that a plaintiff, to establish a TCPA violation, "need only show that [the Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).  Because the Defendants have violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendants, and each of them, have committed the criminal violation of 47 U.S.C. §501.  Shorepointe's entire business model and business operation is a scam and fraud.  The multiple acts of wire fraud,

FIRST AMENDED COMPLAINT- 7

in violation of 18 USC §1343, provide the basis and foundation of predicate acts that make Defendants, and each of them liable for conspiracy to violate the TCPA.

17.     Shorepointe and Clairmont have knowingly and intentionally failed to register as telemarketers in direct violation of California Business & Professions Code sections 17511.1 and 17511.9 (a felony).  Shorepointe and Defendant Clairmont have also failed to post the required $100,000 bond with the California Department of Justice which is required for all telemarketers doing business in California.

18.     "[P]rior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012).  Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail messages at a number assigned to a cellular telephone service using an automatic dialing system or an artificial or pre-recorded voice." *Id.* (denying motion to dismiss for failure to state a claim where the plaintiff alleged "that [the] [d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

19.     Plaintiff Ewing alleges that Defendants placed repeated automated telephone collection calls to Plaintiff Ewing's cell phone (619-719-9640) from Defendant's

phone and that the calls exhibited signs of being made with an Automated

Telephone Dialing System, including repeated telemarketing calls to Plaintiff

Ewing within a period of time and the presence of a pause or click (which is

proven by the recording), which is commonly associated with an Automated

Telephone Dialing System (ATDS). Those allegations are true and are sufficient to

establish the elements of a TCPA claim.  Defendant Shorepointe' telemarketing

agent also admitted on the call that they used an ATDS to initiate the dialing of the

call to Plaintiff Ewing.

20.    ABC, Inc (a Doe Defendant to be named after discovery reveals the same)

that was hired by Shorepointe to knowingly and intentionally make robo-dialed

calls to Plaintiff Ewing and Plaintiff Stark with a pre-recorded voice message that

was used for telemarketing purposes between June 1, 2017 and August 4, 2018.

ABC, Inc has subsequently made illegal telemarketing calls to Ewing and

discovery may very well lead to adding ABC, Inc as a defendant herein.

21.    Plaintiffs each requested a copy of Clairmont's and Shorepointe's Do-Not-

Call policy and both Shorepointe and Defendant Clairmont failed to provide a

copy.  This is a violation of 47 USC §227(c).  To this day, Defendants have still

not provided a copy of their required written do not call policy.

22.    Carmela Reyes, an agent of Shorepointe, committed the crime of extortion

by threatening Plaintiff Ewing with criminal action by threatening to contact the

San Diego Police Department if Plaintiff Ewing did not give up his rights, money and property, all in violation of California Penal Code sections §519 and 523. Carmela Reyes acted at and with express direction and control by Shorepointe.

23.    Plaintiff Ewing also spoke with "Jackie" in the Philippines and she admitted that they called Ewing's cell phone without scrubbing their list and that they do not have a Do Not Call policy.   Jackie can be reached at 323-989-3378.  This is a Google voice phone number.

24.    California Civil Code section 1770(a)(22)(A) prohibits prerecorded telemarketing messages.  Shorepointe called with an initial prerecorded message.

25.    Plaintiffs hereby expressly plead, *in the alternative*, that Defendant Clairmont, is the alter ego of Defendant Shorepointe Partners, LLC.   Defendant Clairmont is, *in the alternative*, the alter ego of Shorepointe for purposes of piercing the corporate veil of liability protection.  Specifically, Clairmont cannot hide behind the corporate veil to avoid and evade liability because the underlying conduct alleged herein is criminal.  That is, Clairmont cannot use Shorepointe to commit their criminal activity of wire fraud, criminal ATDS telemarketing, extortion, and criminal fraud.   The corporation does not insulate Clairmont from personal liability for his criminal activities. Plaintiffs allege that the corporation's veil should be set aside for purposes of this lawsuit to personally attack and reach assets of Clairmont directly or to indemnify Shorepointe and Defendant Clairmont

1    for the criminal acts engaged in by and through Shorepointe and Defendant

2    Clairmont at the direction and control of Clairmont.

3    26.    Plaintiffs hereby expressly plead, allege, complain and accuse that

4    Defendant Clairmont is and was knowingly and intentionally engaged in a

5

6    conspiracy to commit telemarketing and TPCA violations through the conduct of

7    an enterprise, that is the Shorepointe enterprise.  Defendants have and are running

8    a boiler-room operation with over one hundred telemarketers that they have trained

9

10   and conspired with to make illegal telemarketing calls to Americans whose cellular

11   and home phones are registered on the FTC's national Do-Not-Call registry.  The

12   running and operating of the telemarketing boiler-room to harm, injure, scam and

13   hurt Americans, including these Plaintiffs, is a criminal act in violation of the

14   TCPA.

15

16   27.    Defendant Clairmont gave orders, directions, advice, counsel and

17   information to Shorepointe on exactly how, when and where to conduct illegal

18   telemarketing calls to California citizens, including Plaintiffs specifically.

19

20   28.    Defendants actually have several boiler-room operations, including one in

21   the State of California at the Shorepointe headquarters and another in the

22   Philippines.  Defendants believe that running their wire fraud operation using the

23   wires or telephone systems of the United States by originating their scam

24

25   telemarketing calls from outside the USA will allow them to evade America's

FIRST AMENDED COMPLAINT- 11

18cv1828

telemarketing and recording laws.  This they cannot do.  This Court is requested and moved to make America great again and bring home jobs to America and not allow Defendants to export American dollars and American jobs overseas like these Defendants have done.  Defendants, and each of them, have directly and through each other, violated 18 USC section 1343 (wire fraud) by calling Plaintiffs and other California residents from the Philippines and California to illegally sell their timeshares into California without a California telemarketer license from the CA Department of Justice.

29.     Defendant Clairmont harmed, injured and caused tortious interference with each Plaintiff's business by repeatedly calling or causing others hired by him to call Plaintiffs over and over again to telemarket their scam.  Each Plaintiff's business was seriously interrupted by the plethora of calls instituted and made by Clairmont and Shorepointe.  Plaintiffs could not meet with their own separate clients during the times the Defendants called each Plaintiff's phone.  Further, each Plaintiff could not engage in gainful business activity while Plaintiffs had to wait for their cell phones to recharge as a result of the battery depletion cause by Defendants.  Moreover, Plaintiffs suffered and incurred the loss of the use of the phone during each call and during the recharging thereof.  In addition, Plaintiffs were harmed and injured by the fact that Defendants, and each of them, directly and proximately caused Plaintiffs to have to pay for the electric utilities to recharge

each phone and to have to pay AT&T cellular phone company for the additional

minutes used up by Defendant's illegal scam telemarketing calls made to sell into

California without any license whatsoever. Defendant's conduct as described

herein above actually caused Plaintiffs to sustain and suffer actual harm and loss of

business and property. The US Supreme Court has ruled that defendants are

vicariously liable under the TCPA for the acts of their agents. But for each

Defendant's conduct, Plaintiffs would have been able to earn the income, revenue

and gains that were denied to Plaintiffs as a direct, legal and proximate cause of

each Defendants illegal, criminal and conspiring conduct. Plaintiffs additionally

allege that the significant time and effort spent to bring these Defendants to justice

before this Court through research and investigation is also an injury caused by

Defendants and each of them. Defendants are required to obey the law and when

Plaintiffs have to expend time, money, effort and energy to bring these law-

breakers to justice, it is a substantial injury to Plaintiffs.

30.     Plaintiffs were forced to pay San Diego Gas & Electric Company more

money for Plaintiff's electric utility bill than they would have had to pay but for

Defendants, and each of them, violating Plaintiff's privacy and other rights from

the illegal calls made by Defendants and their employees and agents, to Plaintiffs.

31.     Defendants actually sat down on July 3, 2017 and knowingly and

intentionally met, convened, gathered and conspired to employ a telemarketing

company located in the Philippines, to make ATDS-dialed prerecorded message calls to Plaintiffs and thousands of other California citizens and residents. Defendants, and each of them, conspired to employ this Philippine telemarketing boiler-room of criminals to use advanced technology to randomly and sequentially dial every combination of telephone number in all of California's area codes, including Plaintiff's home and cellular phones within area code 619. The persons, the Defendants, and each of them, employed, trained and conspired within the Indian operation to make and in fact did make live transfers of the illegal calls to the boiler-room operation at their corporate headquarters using the telephone system, whether direct dial or through Skype or Google Voice, to violate the DNC registry to telemarket is wire fraud. Defendants knowingly and intentionally, with an evil hand guided by an evil mind, exactly and expressly did this every day from July 3, 2017 to August 4, 2018.

32.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered--and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

33.     As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v. Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

34.     The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However, because Plaintiffs are proceeding pro se, their complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard reviewing pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir.

18cv1828

2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

## STANDING

35.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

      i.   A valid injury in fact;

     ii.   which is traceable to the conduct of Defendants;

and is likely to be redressed by a favorable judicial decision.  See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

A. The "Injury in Fact" Prong.

Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo* (*Id.*). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiffs were called on their cellular phones at least twenty-five (25) times by Defendants.  In fact, Plaintiffs expressly informed Defendants to cease and desist from all future telemarketing on the very first call.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiffs in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637,

638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further

exacerbated by the fact that Plaintiff's phone number, at all times relevant to this

litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC

Registry"). As well, Plaintiffs had no prior business relationship with Defendants

prior to receiving the seriously harassing and annoying calls as well as the

extortionate threats by Clairmont.   All of Plaintiff's injuries are concrete and de

facto. For an injury to be "particularized" means that the injury must "affect the

plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540,

*578 U.S. ___ (2016)* at 14.       In the instant case, it was each Plaintiff's phone

that was called and it was Plaintiffs who answered the calls. It was Plaintiff's

personal privacy and peace that was invaded by Defendant's persistent phone calls

using an ATDS and a pre-recoded message, despite Plaintiffs having no prior

business relationship with Defendants and Plaintiff's attempt to avoid the damage

by registering their number on the DNC Registry.  Additionally, Plaintiff Ewing

has a clear warning on each and every page of his web domain that warns

offenders that if you call, you will be sued.  In fact, Ewing had to remove his own

phone number from his web page several years ago (please go ahead and verify

this on the waybackmachine[4]) due the incessant, annoying and harassing calls by

---

[4] Exact copy of web page in 2015:
https://web.archive.org/web/20151109045712/http://www.antonewing.com:80/contact

FIRST AMENDED COMPLAINT- 17

18cv1828

scam telemarketer like these defendants.  Moreover, a simple Google search of Ewing's phone number will yield page after page of warnings that threaten a civil suit if you call.  And, Ewing has sent out hundreds of emails to TCPA defense attorneys nationwide warning them that if their clients call Ewing's phone, they will be sued.  Finally, Plaintiffs are responsible to pay the bill on their cellular phone, and to pay the bill for the electric utility company kilowatt-hour power usage to recharge them. All of these injuries are particularized and specific to Plaintiffs and will be the same injuries suffered by each Plaintiff.

B. The "Traceable to the Conduct of Defendants" Prong

The second prong required to establish standing at the pleadings phase is that Plaintiffs must allege facts to show that their injury is traceable to the conduct of Defendants. In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone and home phone (land line) were placed either by Defendants directly, or by Defendants' agent at the express direction and control of Defendants.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test[5] from the 9th Circuit and Civil code §2307.

---

[5] 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

FIRST AMENDED COMPLAINT- 18

18cv1828

C. The "Injury is Likely to be Redressed by a Favorable Judicial Opinion"

Prong

The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiffs. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiffs have standing to sue Defendants on the stated claims.

> "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016). In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as

providing a basis for a lawsuit.'" Mbazomo, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow Romero, explaining that Romero "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." Id.

*Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

36.    "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id*. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id*. In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id*. However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id*. at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id*. at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory

right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549.  In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

37.     The TCPA provides a private right of action for violations of § 227(b) and the associated regulations. 47 U.S.C. § 227(b)(3).  Subsection (b) prohibits calls (other than for an emergency) to a telephone number assigned to a cellphone by way of an automatic telephone dialing system ("ATDS") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).  In the Ninth Circuit, a plaintiff must show: (1) "the defendant called a cellular telephone number; (2) "using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  A plaintiff must also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

38.     First, a text message and a prerecorded robotic voice message call are both a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 952-54 (9th Cir. 2009).  Plaintiffs support these allegations with activity logs from July 2018 to August 2018 documenting the 15 calls. This element is satisfied.

39.    Second, Plaintiffs adequately plead use of an automatic telephone dialing system ("ATDS").  The TCPA defines ATDS to mean "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this function. *See Satterfield*, 569 F.3d at 951.  "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* Defendants called with a prerecorded message, which, by definition requires an auto-dialer that operates without human intervention.

40.    "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the defendant used without the benefit of discovery." *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.  For example, in *Charkchyan*, the plaintiff's allegations supported the use of an ATDS. *Id.*  In that case, the plaintiff described the messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally scripted. *Id.*  This was enough to establish the defendant used an ATDS. *Id.*   Similarly, in *Kramer v. Autobytel*, the plaintiff alleged

sufficient facts to support a reasonable inference that the defendants used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code registered to [a defendant]. The messages were advertisements written in an impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with the Defendants." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . . frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015). *See also Daniels v. ComUnity Lending, Inc.*, No. 13cv488-WQH-JMA, 2014 U.S. Dist. LEXIS 1606, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (ATDS use not plausible because the allegations indicated the defendants directed calls specifically towards the plaintiff).

41.     Here, Plaintiffs allege that Defendants contacted them using a "telephone dialing system."  This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiffs allege sufficient additional facts. First, each of the calls are provided to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiffs personally and they advertise timeshare sales. Third, Plaintiffs declare that they have never heard of Defendants, visited any location operated by

Defendants prior to the harassing and annoying calls, nor provided their cellular telephone numbers to Defendants or consented to receive calls from Defendants. Plaintiffs also have had no prior business relationship with Defendants. Plaintiffs had no reason to be in contact with Defendants nor have they ever purchased any kind of timeshare. Plaintiff's allegations are sufficient to establish that Defendants used ATDS in sending their prerecorded solicitation messages.

42.     Third, Plaintiffs adequately plead that the conduct was without their prior express consent. "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.  Moreover, "[t]he Federal Communications Commission ('FCC'), tasked with instituting implementing regulations for the TCPA, added an express *written* consent requirement in the case of messages that 'include[] or introduce[] an advertisement or constitute[] telemarketing.'"  *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47 C.F.R. § 64.1200(a)(2)).  An "advertisement" includes "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).  "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* §

FIRST AMENDED COMPLAINT- 24

64.1200(f)(12).  Establishing prior express consent of the called party "is an affirmative defense for which the defendant bears the burden of proof." *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

43.    In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any location operated by [the defendant]; and (4) he [had] never provided his cellular number to [the defendant], nor consented to receiving calls from [the defendant]." *Id.*  Where the defendant failed to provide any conflicting evidence, this was sufficient. *Id.*

44.    Similarly, in Plaintiff's case, the allegations establish that they did not give prior express consent.  They declare that they were "the regular user and subscriber to the cellular telephone number at issue."  They also declare that they have "never heard of [Defendants], visited any location operated by [Defendants], provided [his] cellular telephone number to [Defendants,] or consented to receive text messages from [Defendants]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that they did not give prior express consent authorizing Defendants to send the prerecorded messages. Furthermore, the calls promote the sender's illegal Google listing services and fall within the FCC's definition of an

18cv1828

advertisement and/or telemarketing. Thus, express written consent was required, and there is no evidence of such. This element is consequently satisfied.

45.     Fourth, Plaintiffs sufficiently plead that they were the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here, Plaintiffs declare that they were "the regular user and subscriber to the cellular phone number" that received the calls and messages.  Plaintiffs are therefore the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. *Drew v. Defendants Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *11-16 (N.D. Cal. Apr. 18, 2016)

46.     Plaintiffs were illegally called for telemarketing purposes by SHOREPOINTE staff, employees or agents thereof, including one person named Carmela Reyes.

**JURISDICTION TO HEAR THIS COMPLAINT IN FEDERAL COURT**

47.     Both Plaintiffs bring this action for multiple violations of California's Privacy Act and California Penal §630, et seq. by Defendant Shorepointe and

Clairmont as hereinafter described.  Defendants have violated 48 U.S. C. §227 and therefore this Court has jurisdiction pursuant to the federal questions raised herein. *Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740 (2012).

48.    "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdiction analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing *Panavision*, 141 F.3d at 1320). Due process requires that Defendants must have minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

49.    There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

18cv1828

797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal citations omitted).  To establish specific jurisdiction, Plaintiffs must show: "(1) [t]he non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avail[ed] [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* at 802.  At least two courts in the 9th have found specific jurisdiction in circumstances  similar to this case. One court found personal jurisdiction where the out-of-state defendant sent numerous unsolicited fax advertisements to a California-based plaintiff. *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-10 (N.D. Cal. Jan. 5, 2009). Another court found personal jurisdiction where the defendant operated a website that the California-plaintiff used, called and emailed the plaintiff numerous times, and the plaintiff's claims arose out of those contacts. *Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist. LEXIS 177166, 2013 WL 6571629, at *8 (N.D. Cal.

Aug. 19, 2013). *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *4-7 (N.D. Cal. Apr. 18, 2016)

50.     Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiffs reside in the County of San Diego, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

### Standard Applicable to a Preliminary Injunction

51.     To demonstrate his entitlement to a preliminary injunction, Plaintiff EWING must show (a) that he will suffer irreparable harm and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiffs' favor.

52.     This Court has personal and subject matter jurisdiction and venue over federal law claims and may hear pendent state law violations.

53.     The Court is requested to enter an order for preliminary injunction to prohibit Defendants from calling or spamming Plaintiffs and to prohibit Defendants from selling their personal confidential information to third parties.

///

18cv1828

## GENERAL ALLEGATIONS & CORPORATE BACKGROUND

54.     Plaintiff Anton Ewing is a U.S. citizen and a resident of the City of San Diego, County of San Diego, State of California.

55.     The California Real Estate Department shows that Clairmont is not under any broker and cannot engage in selling real estate, including timeshares.

| | |
|---|---|
| **License Type:** | SALESPERSON |
| **Name:** | Clairmont, Frederick Jr |
| **Mailing Address:** | 2781 MATTE LN |
| | VISTA, CA 92081 |
| **License ID:** | 01474235 |
| **Expiration Date:** | 01/13/21 |
| **License Status:** | LICENSED NBA |
| **Salesperson License Issued:** | 01/14/05 |
| **Former Name(s):** | NO FORMER NAMES |
| **Employing Broker:** | NO CURRENT EMPLOYING BROKER |

56.     Defendant Shorepointe is a limited liability company formed by the Secretary of State of California and is registered to do business in California at all times relevant to this case.   Shorepointe does not have a California telemarketing license even though it sells timeshares to California residents.   Shorepointe purposefully directed its activities into California and has availed itself of the benefits and protections of California law.  This action arises out of Defendants' violations of California's Invasion of Privacy Act, Cal. Penal Code §630, *et seq.* ("CIPA"), which prohibits the recording of confidential communications without

18cv1828

the consent of all parties to the conversation and the Telephone Consumer Protection Act, 47 U.S.C. §227.

57.     During the period relevant herein, which is July 3, 2017 and continuing presently, Defendant Shorepointe was and continues to be the agent of Defendant Clairmont for purposes of setting aside the corporation's veil of liability protection. Because Defendant Clairmont has disregarded and disrespected the corporation (LLC) and all of its required formalities of operation, as well as the fact that Clairmont has used and employed Shorepointe to commit multiple criminal acts, including but not limited to 47 USC §501, California Penal Code §632, 18 USC §1343, then Clairmont cannot hide behind the corporation.    Clairmont is attempting to evade personal liability by using Shorepointe to commit his crimes as described herein.

58.     On August 3, 2018, Defendant Shorepointe, or one of its employees, agents or contractors at its direction and control, called Plaintiff Ewing from telephone number 323-989-3378, on Plaintiff's personal cellular telephone at 619-719-9640 for which Ewing has expressly informed the public to not make solicitation calls via National Do-Not-Call list registration as well as other public warnings.  A personal cellular phone is not even required to be listed on the National Do-Not-Call list in order to receive protection from spam telemarketers.

59.     During the period relevant herein, Shorepointe and Clairmont were a provider of information technology and centralized operational and back-end support services to Shorepointe and all of its subsidiaries. As such, Shorepointe, provided the infrastructure for dialing and recording the calls at issue in this litigation.  Shorepointe used Automated Telephone Dialing Systems and recording devices at the direction of the Shorepointe officers, and its relevant subsidiaries. Shorepointe also managed the call centers and telephone architecture and telephone recordings for the enterprise, and its subsidiaries, including Defendant Shorepointe and Clairmont.  Defendant Shorepointe is technologically sophisticated and Defendant Shorepointe employs this high level of knowledge and know-how to run its criminal syndicate.

60.     Moreover, Shorepointe continues to monitor and record telephone calls to California residents, including Plaintiffs.

61.     During the relevant period herein, thousands of telephone calls with individuals in California were recorded by Shorepointe telephone systems at the direction of each of the other Defendants.

62.     Defendant Shorepointe is located in California.

63.     Defendant Shorepointe owned the call centers that were used to make the non-consensual recordings of confidential communications that are at the core of this matter.  Shorepointe also supervised and conducted the internal affairs and

18cv1828

daily business operations of Defendant Shorepointe in such a way as to treat all of its subsidiaries, including Shorepointe, as if it did not exist by engaging in conduct, acts or omissions including controlling Shorepointe and its employees and agents to such a degree as to render Shorepointe a mere instrumentality of Defendant Clairmont.  These calls crossed state lines and thus constitute the predicate act of wire fraud in that Defendants used the telephone infrastructure of the United States to commit their interstate criminal activities that were continuous and ongoing for several years.  Plaintiffs were also denied the right to honest services by Defendants when the Defendant lied and harassed Plaintiffs on said calls. Defendant Shorepointe is also in the business of illegally selling lists of names of persons on the National Do-Not-Call list so that those persons get and receive calls from spammers and telemarketers.  Defendant Shorepointe knows that all of the calls made are recorded without permission or proper disclosure of the recording. S Shorepointe has also feloniously failed to register as a telemarketer in violation of B&P §17511.9.

64.    Plaintiffs are informed and believe, and therefore allege, that Defendant Shorepointe's comprehensive right to control is sufficient to meet the agency standard under California law.  See Civil Code §2307.

65.    During the relevant period described herein, Defendants each aided and abetted, encouraged and rendered substantial assistance to each other in furthering

the CIPA violations.  In addition to acting on their own behalf individually,

Defendants, each of them, are and were acting as the agent, servant, employee,

joint venturer, and representative of, and with the knowledge, consent and

permission of, and in concert with the other defendants.  The actions of the

defendants as described in this Complaint all fall within the course, scope, and

authority of the agency, service, and employment relationships that exist between

the Defendants, and as such, create joint ventures between all of the defendants to

the extent that binding legal relationships do not already exist. The actions and

representations of Defendants constitute a conspiracy on the part of Defendants for

the purpose of such actions and representations made to the Plaintiffs of this cause

of action.   Plaintiffs are entitled to engage in discovery to obtain admissible

evidence to prove to the jury that Defendants have knowingly and intentionally

committed the torts and crimes alleged herein.

## FACTUAL ALLEGATIONS REGARDING CONFIDENTIAL
## TELEPHONIC COMMUNICATIONS WITH PLAINTIFF

66.    On July 26th, 29th and August 3rd and 4th, 2018, Plaintiff Ewing was called by

Shorepointe Defendants.  Shorepointe engaged Plaintiff Ewing in confidential

telephone communications.  To the best of Plaintiff Ewing's recollection, he spoke

to Shorepointe Defendants' personnel several times in addition to being called by

the Shorepointe robotic Echo system.  On any of the occasions when he spoke

telephonically with Shorepointe Defendants' personnel, Plaintiff Ewing was not advised at the outset of the calls that the calls might be recorded by Shorepointe Defendants. In light of the sensitive nature of the personal and confidential information being discussed during the telephone calls, Plaintiff Ewing had an objectively reasonable expectation of privacy in that he reasonably expected that the conversations were not being overheard, monitored and/or recorded. Defendant Shorepointe refused to provide Plaintiff with a written copy of its Do-Not-Call policy and refused to take Ewing's name and number off their telemarketing list.

## DEFENDANTS' IMPROPER AND ILLEGAL
## RECORDING POLICIES AND PRACTICES

67.    Defendants' policies and practices, during the period relevant herein and continuing to the present were to record confidential telephonic communications with California individuals without advising them at the outset of each telephone call that it is being recorded, in violation of California Penal Code §630, *et seq.*

68.    Shorepointe and Defendant Clairmont did not obtain consent to record any of the telephone conversations prior to the time they recorded the calls.

69.    Shorepointe and Defendant Clairmont designed and implemented an extensive call center system for the thousands of consumer transactions serviced by its various affiliates and subsidiaries. During the times relevant to the CIPA claims

made herein, the system included two domestic and international call centers from which customer calls are placed and received on behalf of Shorepointe business units.

70.   Shorepointe and Defendant Clairmont operated, implemented and managed the architecture and infrastructure necessary to meet the call recording strategies set by Shorepointe and Defendant Clairmont.  At the direction of the relevant business unit subsidiary of Shorepointe and Defendant Clairmont, their infrastructure dialed telephone numbers to California individuals and recorded the telephone calls.  At each call center, Defendant Shorepointe and Defendant Clairmont used databases and servers to store and retrieve the recordings.

71.   Shorepointe and Defendant Clairmont continued to maintain call centers and oversee recordings in connection with their line of business.  Plaintiffs will seek, demand and argue for punitive damages at trial herein to send a message to Defendants and others similarly situated that violation of California's criminal and federal stalking, terrorism and harassment laws are not allowed.

72.   The central Automated Telephone Dialing System ("ATDS") was, and currently continues to be, used by Defendants to initiate up to 1,000 calls a day.

73.   Defendants together strategically managed the ATDS to maximize resources; i.e., by employing a consistent process across the businesses for

18cv1828

determining how and when calls would be made through the ATDS and scoring or rating the calls for advance treatment through the ATDS.

74.     Shorepointe's businesses directly loaded customer information onto Shorepointe's "mainframe" or "back-end" computer system, which includes the ATDS.  During the day, accounts would be loaded into dialer tables, and the tables would then be run through the dialer.  Once the ATDS would initiate the call, and a customer would answer, Shorepointe's "automated call distributor" would then route the call to an available agent.  Plaintiffs Ewing and Stark were physically present in California during each and every illegally recorded telephone conversation alleged herein.  At the same time the call was routed, the agent received the customer's information on a computer screen.  If a recording of the telephone communications was going to be made by the recording system, the recording would begin when the Shorepointe agent picked up the call.  The agents do not have the ability to stop or start call recording.  The agents do not know which calls are being recorded.  An employee of Shorepointe stated that all calls are recorded at the end of the conversation and there is no warning or disclosure of such recording to the consumer at the beginning.

75.     With respect to whether the telephone agents themselves provide the call recipients with a verbal advisement that the call may be recorded, Defendants

18cv1828

admit to a policy whereby the agents do not provide any advisement to customers that the calls are being recorded.

76.     For calls related to Shorepointe, Defendants are required, pursuant to California Penal Code §630 et seq., to give a verbal advisory that the call is being recorded before speaking to a customer.

77.     CIPA prohibits the recording of communications without first obtaining the consent of all parties to the conversation. Cal. Penal Code §632. PC §632.7 does not require that a communication be confidential in order to be provided protection from interception or recording. The text of the section notably contains no reference to "confidential communications;" moreover, more than just confidential communications are protected.  All communications that are recorded without the consent of both parties to the communication are protected.  Plaintiffs are suing for Defendant's illegal recording of calls to their cellular phones which is expressly provided for in PC §632.7.[6]

78.     The right protected by Section 632 is not against the betrayal of a party's confidence by the other party. Rather, Section 632 protects against simultaneous dissemination to an unannounced second auditor without the party's consent. Any

---

[6] Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two **cellular** radio telephones, a **cellular** radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a **cellular** radio telephone, shall be punished by a fine

FIRST AMENDED COMPLAINT- 38

communication, regardless of the intimacy of the facts discussed, that is recorded devoid of notice of recordation, is a violation of California law.

79.     Under California law, the term "confidential communication" includes any communication carried on in circumstances that may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. Cal. Pen. Code §632(c).   In other words, a communication is confidential "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard."

80.     In light of the sensitive nature of the personal financial and related information being discussed in the calls with Defendants, Plaintiffs had an objectively reasonable expectation of privacy – in that Ewing and Stark reasonably expected that the conversations were not being overheard, monitored and/or recorded.

81.     In violation of the CIPA, Defendants recorded Plaintiff's telephone calls without Ewing's or Stark's express consent.

82.     Defendants have engaged in a pattern and practice of recording a substantial percentage of the telephonic communications with individuals located in California.

83.     Defendants intentionally, and without the consent of all parties, by means of

an electronic recording device, recorded confidential telephonic communications

with Plaintiff Ewing.

84.     The Complaint here is timely filed.  The applicable statute of limitations for

violations of the CIPA is one year (Cal. Civ. Proc. Code §340(a).

## CAUSES OF ACTION

## I.

## (For Statutory Damages and Injunctive Relief for Violations of Cal. Penal

## Code Sections 632, 632.7 and 637.2(a)-(b) - CIPA)

85.     Plaintiffs incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

86.     At all times relevant herein, Defendants routinely communicated by

telephone with Plaintiffs in connection with attempts to sell products of

Defendants.

87.     At all times relevant herein, Defendants made use of a software system that

enabled them to secretly record confidential telephone conversations between

Plaintiffs on the one hand, and Defendants on the other hand.

88.     In each of their conversations with Defendants, Plaintiffs discussed their

confidential personal financial circumstances and affairs on each account.  It was

reasonable for the Plaintiffs to expect that the conversations would be confined to

the parties to the conversation and that his conversations were not being overheard or recorded.

89.     Each of the conversations between Defendants and Plaintiffs was a "confidential communication" within the meaning of California Penal Code section 632(c).

90.     California Penal Code section 632, *et seq.*, prohibits a party from recording such conversations without first informing all parties to the conversation that the conversation is being recorded.  Defendants' confidential telephone communications with Plaintiffs were secretly and surreptitiously recorded by Defendants without obtaining consent to record such conversations.

91.     Defendants' practice of recording telephone conversations with each Plaintiff violated California Penal Code section 632(a).

92.     Pursuant to California Penal Code §637.2(a)(1), Plaintiffs are entitled to recover statutory damages in the amount of $5,000 per violation.  Plaintiff's counsel, where hired, is also entitled to attorneys' fees and costs pursuant to Cal. Civ. Proc. Code §1021.5.

93.     Pursuant to California Penal Code §637.2(b), Plaintiffs also seeks a preliminary and permanent injunction to restrain Defendants from committing further violations of CIPA and to prohibit and prevent Defendants from making future death threats to Plaintiffs and their families.

18cv1828

94.     Pursuant to California Penal Code §637, Defendants have willfully disclosed the contents of Plaintiff's telephonic communications to a third party without Ewing's and Stark's consent.

## II.

## VIOLATION OF 47 U.S.C. §227 - TCPA

95.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

96.     47 C.F.R. 64.1200(c)(2) prohibits calling any number on the national Do-Not-Call Registry.  47 C.F.R. 64.1200(a)(1)(iii) states that no person or entity may initiate any commercial purpose telephone call to any cellular telephone that is already on the national Do-Not-Call Registry.  Plaintiffs and Defendants do not and did not ever have any pre-existing or established business relationship at any time.  Defendants are not a tax-exempt nonprofit organization or a political organization.

97.     Defendants do not have a Do-Not-Call database.  Defendants refused to identify themselves upon request by Plaintiffs.   Defendants refused to put Plaintiffs on their Do-Not-Call list.  Defendants used and employed an automated dialer to call Plaintiffs.

98.     Defendants do not have a Do-Not-Call policy that is written.

99.   Defendants refused to provide Plaintiffs with a written copy of any Do-Not-Call policy.

100.   Defendants do not scrub their call lists against the National Do-Not-Call list or registry.

101.   Defendants do not have any personal relationship with Plaintiffs.

102.   Defendants refused to provide the full name of the caller on the telephone who initiated the call.

103.   Defendants refused to provide a telephone number or address at which the Defendants could be contacted.

104.   Defendants knowingly and willfully violated the automated-call requirements under 47 U.S.C. §227(b)(3) and willfully and knowingly violated the Do-Not-Call list requirements under 47 U.S.C. §227(c )(5).  *Charvat v. NMP, LLC* (2001, CA6 Ohio) 656 F.3d 440 holds that Plaintiffs may recover both $1500 statutory damages awards even if both violations occurred in the same telephone call.

105.   Plaintiffs further allege that Defendant Frederick Clairmont, Jr., Defendant Shorepointe Partners, LLC., have violated the Telephone Consumer Protection Act, 47 USC §227(b)(1)(A) and 16 CFR Part 310, by illegally calling Plaintiff's cellular telephone number 619-719-9640 and 619-347-0726 to solicit and sell.

18cv1828

106.   Plaintiffs have each been injured in the business and property as a direct and foreseeable result of the Defendant's telemarketing activities.

107.   Defendant Shorepointe, along with the employees and contracted agents of Defendant Shorepointe, owed a duty of care, a duty of honesty, and a duty of loyalty as well as a fiduciary duty (found in every client-customer relationship wherein confidential and private information is exchanged), to Plaintiffs when Shorepointe called Plaintiffs to sell its scams.  Those above stated duties, and each of them, were breached by Defendants, including Defendant Shorepointe, when their employees and agents illegally, and criminally, called Plaintiffs by violating 47 USC section 501[7] and 227(b)(1)(A) and (c)(5), as well as the Telemarketing Sales Rule (16 CFR Part 310).  Additionally, Defendants breached said duties when they, and their agents and employees, illegally, and with criminal *mens rea*, secretly recorded the solicitation calls they made to Plaintiffs in violation of California Penal Code section 632, 637.2 and 632.7 as well as violation of Civil Code section 1770(a)(22).

---

[7] Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this chapter prohibited or declared to be unlawful, or who willfully and knowingly omits or fails to do any act, matter, or thing in this chapter required to be done, or willfully and knowingly causes or suffers such omission or failure, shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided in this chapter, by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both.

108.   If the prior 107 paragraphs do not make it clear, then let the record reflect that Defendant Clairmont and Defendant Shorepointe are vicariously liable to each plaintiff for hiring, contracting and ordering Cash4Asking, LLC to knowingly violate the TCPA as its agent.  Clairmont and Shorepointe cannot "line up people" by illegally telemarketing them via Cash4Asking, LLC.  Hiring someone to go commit a crime (47 USC §501) makes you liable for the crime as well.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment, jointly and severally, against Defendants Shorepointe Partners, LLC, a California limited liability company, and Frederick Clairmont, Jr. as follows:

A.     For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2); $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

B.     For punitive damages in an amount to be determined with exactness at trial herein;

C.     For an injunction prohibiting Defendants from calling Plaintiffs ever again;

D.     For a preliminary and permanent injunction to restrain further

violations of the CIPA, pursuant to California Penal Code §637.2(b);

E.     For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5;

F.     For pre- and post-judgment interest at the legal rate;

G.     For an injunction prohibiting Defendants from ever contacting Plaintiffs ever again in any manner whatsoever, including spam texting;

H.     $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

I.     $1,500 for each violation of 47 CFR §64.1601(3)  caller ID spoofing;

J.     $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

K.     $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

L.     $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

M.     $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

N.     $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone number on the DNC registry; and

O.     For any other relief that the Court deems just and proper.

FIRST AMENDED COMPLAINT- 46

# DEMAND FOR JURY TRIAL

Plaintiffs are entitled to and demand a trial by jury for all claims so triable.

This is a verified Complaint and all statements and declarations herein are true and correct to the best of our knowledge, information and belief.

Dated this 30th day of October, 2018

/s/ *Collette Stark*
Collette Stark,
Plaintiff in pro per

/s/ *Anton Ewing*
Anton Ewing,
Plaintiff in pro per

**18-CV-1828- JAH NLS**

## PROOF OF SERVICE

I, Jocelyn Segura, being a United States Citizen and over the age of 18 and not a party to this case, hereby declare that I have served the following documents:

**First Amended Complaint**

To the Defendant Frederick Clairmont Jr.'s attorneys of record at:

Cary Richard Bond, Esq.
Law Offices of Cary Richard Bond
555 West Beech Street, Ste 430
San Diego, CA 92101

and

ShorePointe Partners, LLC
Agent for service of process:  Frederick Clairmont Jr.
5055 Avenida Encinas, Ste 100
Carlsbad, CA 92008

I declare under penalty of perjury that the above was served as stated.

Dated:  October 31, 2018

Jocelyn Segura
Process Server Reg. # 3237
County of San Diego

18CV1828